THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEANNETTE L. MUCHA, Defendant-Appellant.

Second District   No. 84—0596

Opinion filed January 31, 1986.

Aldo E. Botti, Frank J. DeSalvo, and John N. Pieper, all of Botti, Marinaccio, DeSalvo & Pieper, of Oak Brook, for appellant.

James Ryan, State's Attorney, of Wheaton (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

Following a hearing conducted pursuant to the Illinois implied-consent statute (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1), the trial court found that the State had met its burden on the issues required to be proved under that law. Defendant, Jeannette Mucha, appeals, contending (1) that she should not be deemed to have "refused to submit" to a breathalyzer test because her refusal was a result of confusion on her part between her *Miranda* rights and her rights under the implied-consent law, (2) that she had a constitu-

tional and statutory right to consult an attorney prior to deciding whether to submit to the breathalyzer test, and that she was improperly denied that right, and (3) that the proceedings under the implied-consent law should have been dismissed when she subsequently pleaded guilty to driving while under the influence of alcohol (DUI).

At the hearing under the implied-consent law, the State called Officer Carolyn Vallas of the Bloomingdale police department. She testified that on November 12, 1983, at about 1:30 a.m., as she was driving eastbound on Lake Street approaching Ridge Avenue, she observed a gold Mercedes Benz facing westbound and stopped about 40 feet east of the intersection. The car was over the double yellow line and extended about three feet into the eastbound lanes. The car's headlights were on, and its left-hand turn signal was blinking.

Vallas pulled up alongside the car. The motor was running. Defendant was slumped over the steering wheel. Vallas got out of her car and tapped on the driver's window of the Mercedes. There was no response. Vallas opened the driver's door and lifted defendant's head back. Defendant, whose eyes were closed, was drooling and making groaning sounds as if she was starting to wake up. At that time two other police officers, Polvere and Marker, arrived.

Marker turned the motor off. Then the officers aroused defendant enough to get her out of the car. Vallas took one of the defendant's arms, and Polvere took the other as they helped defendant exit the car. In the process defendant lost her balance. She then leaned back against the car. Vallas testified that defendant began mumbling something about just getting off the plane from Hungary, and that the police should check her passport. Vallas asked defendant if she knew where she was, and defendant replied that she did not. Vallas asked her if she knew what country she was in, and defendant said, no. Vallas placed her under arrest for DUI and put handcuffs on her. Vallas then escorted defendant to the squad car. At that point defendant was walking on her own.

After defendant had been placed in the squad car, Vallas read defendant her *Miranda* rights. Defendant did not respond. Vallas then drove to the police department. When they arrived Vallas removed the handcuffs from defendant and placed her in a cell.

Vallas stated that about an hour after she saw defendant on Lake Street, she returned to defendant's cell and served her with three traffic tickets. Vallas testified that she then read defendant the implied-consent warning from a card. She read defendant the warning twice because she felt that defendant maybe did not under-

stand it the first time. Defendant acknowledged that she understood the warning. Vallas then asked her if she would take the breathalyzer test, and defendant replied, no. Subsequently, defendant requested to call her lawyer, and Vallas told her she could. Defendant subsequently told Vallas she could not contact her lawyer because she did not know his telephone number. She did call a friend to help post bond.

On cross-examination, the following colloquy occurred regarding defendant's response to the request that she take the breathalyzer test:

"Q. Officer, did you ask my client if she would take a test?

A. Yes.

Q. The breath test?

A. Yes, I did.

Q. Did she say, 'You are violating my rights, I want to talk to my lawyer'?

A. She said, 'No, I won't take the test.' She said, 'You are violating my rights, I want to talk to a lawyer,' yes."

Vallas also acknowledged that at the police station she asked defendant what street she had been driving on, and defendant said she was on Lake Street. She told Vallas that she had started from Elk Grove Village and was traveling westbound on Lake Street. Finally, Vallas was asked how many times that evening defendant asked to talk to an attorney, and she replied, "Several times and she was given several opportunities."

The State also called Officer Barbara Polvere. She testified concerning her observations at the scene of the arrest. Her account was substantially the same as that of Officer Vallas.

Defendant testified in her own defense. She stated that she was the president of her own company. She was a licensed customs broker and freight forwarder. Her business required a great deal of travel. Prior to the date in question she had been out of the country for three weeks. She arrived back in Chicago at 6 p.m. on the date in question. She had not slept for about 30 hours.

When she arrived at the airport, some of her associates from her office picked her up. They then went out to dinner at the Hamilton in Itasca. During the meal, she had two six-ounce glasses of wine.

Defendant testified that she left the restaurant at about 12:30 a.m. She got into her car and began driving home. She was very tired and apparently passed out at the wheel.

Defendant recounted how she was awakened by the police offi-

cers and transported to the station. According to defendant, when they arrived at the police station, Officer Vallas advised her of her rights. Vallas told her that she had a right to remain silent, that anything she said or did would be used against her, and that she would be able to phone an attorney. Defendant asked if she could use a phone to call an attorney, and Vallas replied that she was not allowed to make any phone calls at that time. Vallas then put her in the cell.

About an hour later Vallas returned to the cell. Defendant testified that Vallas read her "the same thing." She then informed defendant that she had to take the breathalyzer test, or she would probably lose her driver's license for six months. Defendant then reminded Vallas that she had previously told her (defendant) that she was allowed to call her attorney. Defendant said that before she answered any more questions, she wanted to call her attorney. Vallas replied that she was not allowed to make any phone calls. Defendant told Vallas that she (defendant) did not believe she would lose her driver's license, and that she thought Vallas was violating her civil rights by preventing her from calling her attorney. Defendant answered a few questions Vallas asked her about where she was driving, and what she was doing, and then she was returned to her cell.

Vallas subsequently took her out of the cell. Vallas had written all of the traffic tickets, and she told defendant that she was allowed one phone call at that time. Vallas asked defendant if she wanted to call an attorney, and defendant replied that "it was rather pointless as she [Vallas] had already written the tickets." Defendant telephoned her sister-in-law to come and get her.

Following presentation of this evidence, defense counsel cited to the court several cases from other States following what has become known as the confusion doctrine. Under this doctrine, it is improper to suspend a person's driver's license under the implied-consent law for refusing to submit to an alcohol test if the refusal stems from the person's misunderstanding that the *Miranda* rights are applicable to the request for the alcohol test. (See *Rust v. Department of Motor Vehicles* (1968), 267 Cal. App. 2d 545, 73 Cal. Rptr. 366 (driver's license improperly suspended for refusal to take alcohol test until consultation with attorney where defendant advised at time of arrest that he had the right to an attorney beginning at that moment).) Defense counsel argued that defendant's refusal to take the test was a result of her belief that her right to counsel under *Miranda* was applicable to the request for the breathalyzer test. The trial judge found that the doctrine was inapplicable because defend-

ant did not show any confusion in this regard. He based this finding on Officer Vallas' testimony that defendant requested to call her attorney after the refusal to take the test, and his conclusion that the refusal was not conditioned on the denial of such request.

Defendant subsequently pleaded guilty to the charge of DUI. She was placed on court supervision for one year and fined $350. She is appealing only the court's decision in the implied-consent proceeding.

■ We first consider defendant's argument that, pursuant to the confusion doctrine, she should not be deemed to have "refused to submit" to the breathalyzer test. We cannot agree with the trial court that this defense was not factually supported. While it is true that on direct examination Officer Vallas testified that defendant requested to call her attorney after the refusal to take the test, on cross-examination it became apparent that that request for an attorney immediately followed the refusal. Defendant's complete response to the request that she take the breathalyzer test was, "No, I won't take the test. You are violating my rights, I want to talk to a lawyer." Considered in its entirely, this response is not distinguishable from the conditional refusal in *Rust*. (See also *Wiseman v. Sullivan* (1973), 190 Neb. 724, 211 N.W.2d 906; *State v. Severino* (1975), 56 Hawaii 378, 537 P.2d 1187.) Defendant's response showed that she believed that her right to an attorney was applicable to the request to submit to a breathalyzer test.

We must decide, therefore, whether the confusion doctrine is part of the implied-consent law in Illinois. Not all of our sister States have embraced it. In *Department of Public Safety v. Frankman* (S.D. 1981), 312 N.W.2d 32, the court declined to adopt the doctrine on the basis that, under its State's implied-consent law, there was no requirement that the defendant understand the implied-consent warning at the time of arrest. In *State v. Staeheli* (1984), 102 Wash. 2d 305, 685 P.2d 591, and *Department of Transportation v. Korchak* (1983), 74 Pa. Commw. 465, 459 A.2d 1295, *rev'd on other grounds* (1984), 506 Pa. 52, 483 A.2d 1360, the courts held that as long as the defendant was advised that refusal would result in driver's license suspension, confusion resulting from the *Miranda* warning was not a defense. Moreover, some of the States which have adopted the confusion doctrine have implied-consent statutes significantly different from ours. For example, the statute under consideration in *State v. Beckey* (1971), 291 Minn. 483, 192 N.W.2d 441, cited by defendant, provided that at the implied-consent hearing the State was required to prove that the defendant did not

have reasonable grounds for refusing to permit the test. (291 Minn. 483, 484 n.1, 192 N.W.2d 441, 443 n.1.) Our statute has no such requirement. The statute construed in *Severino* required the State to show that the defendant "had been informed of the sanctions of this section." (*State v. Severino* (1975), 56 Hawaii 378, 379 n.1, 537 P.2d 1187, 1188 n.1.) Our statute has no such requirement. Our task is to construe the Illinois implied-consent statute in the context of the conflicting authorities cited above.

The Illinois implied-consent statute provides, in relevant part:

> "Such hearing [the implied-consent hearing] *** shall cover only the issues of whether the person was placed under arrest for an offense as defined in Section 11—501 of this Code [DUI] or a similar provision of a local ordinance as evidenced by the issuance of a uniform traffic ticket; whether the arresting officer had reasonable grounds to believe that such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol, other drug, or combination thereof; and whether such person refused to submit and complete the test or tests upon the request of the law enforcement officer. Whether the person was informed that such person's privilege to drive would be suspended if such person refused to submit to the test or tests shall not be an issue." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1.)

This law simply requires the State to prove that the defendant "refused to submit" to the test, not that the refusal was made with full knowledge of the defendant's rights and the possible consequences. In fact, in the last sentence of the passage quoted above, the legislature explicitly stated its intent that the defendant's knowledge of the consequences would not be an issue at the hearing.

In *People v. Solzak* (1984), 126 Ill. App. 3d 119, 466 N.E.2d 1201, the trial court found that the defendant was too drunk to make a knowing refusal under the statute. The appellate court held that the trial court's finding did not preclude suspension, and stated:

> "[S]uch a result would circumvent the plain meaning of the statute, which calls for suspension of one's driver's license upon refusing to take the blood test. Noticeably absent from the statute is any exception to the rule for lack of knowing refusal, and we will not create such an exception by judicial fiat." 126 Ill. App. 3d 119, 123, 466 N.E.2d 1201.

Like the court in *Solzak,* we will not, by judicial fiat, require the State to prove more than what is set forth in the statute. As long as the State shows a refusal to submit to the test, the defendant's

lack of precise knowledge regarding the limitations on his right to counsel is irrelevant. We do not believe that the legislature intended to make the confusion doctrine part of our implied-consent law.

In the instant case the State proved that defendant refused to take the test. That she may have believed that her right to counsel under *Miranda* was applicable to the implied-consent proceeding is immaterial.

■ We now turn to defendant's argument that she had a constitutional and statutory right to an attorney prior to deciding whether to submit to the breathalyzer test, and that she was improperly denied that right. Defendant did not raise this issue in the trial court, and it is, therefore, waived. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 335 N.E.2d 448.) In arguing that she raised this issue below, defendant can point to no statement made by herself or her attorney. Rather, she refers to the following statement of the trial court:

> "[T]he issue seems to be whether if an officer does tell a person that he has certain rights, the so-called Miranda rights, *** does that person have to be allowed the opportunity to exercise some part of those rights which would reasonably require the use of the telephone to call a lawyer ***."

Defendant has taken this statement out of context. Immediately prior to making the statement quoted above, the trial court stated, "The issue then it seems to me is not whether or not the Miranda rights attach on the implied consent refusal ***." The complete statement of the court, of which the portion quoted by defendant is a part, is as follows:

> "[T]he issue seems to be whether if an officer does tell a person that he has certain rights, the so-called Miranda rights, although not required to by the statute, then, does that person have to be allowed the opportunity to exercise some part of those rights which would reasonably require the use of the telephone to call a lawyer, or, *in other words, does it create more of a confusion in the mind of a person than to help which is what the intention of the law is, I believe, on the Miranda warnings.*" (Emphasis added.)

These statements of the trial court, considered in their proper context, did not raise *sua sponte* the question of whether an arrested person has a right to counsel prior to deciding whether to submit to a breathalyzer test. The comments were simply an imperfect restatement of the confusion defense raised by defendant. In this regard it should be noted that when it made its ruling, the trial court de-

scribed the issue as follows:

"Now, following the hearing, numerous cases were submitted from out-of-state jurisdictions standing for the proposition that in the event of an implied consent hearing, a defendant in a DUI case is admonished of his Miranda warnings and also of the obligation he has to take the breathalizer [*sic*], that the duty is on the officer if there is any confusion resulting from the warnings that he has given to clarify the situation so that the Defendant clearly knows that while he has certain Miranda warning protections as to any questions which might be used to elicit evidence which would be the basis for criminal prosecution, *that that does not extend to implied consent, that he has no right to confer with or to consult a lawyer prior to making his refusal or exercising his option to take the breathalizer* [*sic*]." (Emphasis added.)

The trial court did not raise *sua sponte* the issue defendant is attempting to raise here.

Defendant seeks to avoid application of the waiver rule by resorting to the plain error doctrine of Supreme Court Rule 615(a). That rule provides, in pertinent part, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (87 Ill. 2d R. 615(a).) This rule is, however, part of article VI, which is applicable to appeals in criminal, post-conviction, and juvenile cases. An implied-consent proceeding is civil in nature. (*People v. Jacquith* (1984), 129 Ill. App. 3d 107, 472 N.E.2d 107.) Accordingly, Rule 615(a) is not applicable to this appeal.

Defendant also relies on *People v. Green* (1975), 34 Ill. App. 3d 153, 340 N.E.2d 58, a post-conviction case in which the appellate court held that the defendant had not waived the issue of incompetence of his trial attorney by failing to raise it on direct appeal because the appeal was handled by the trial attorney. *Green* is inapplicable to the instant case, however, because here there was no conflict of interest on the part of defendant's attorney which would have prevented him from preserving the issue for review.

Finally, defendant seeks to avoid the waiver doctrine pursuant to the rule that issues may be considered notwithstanding a failure to preserve them for review because of their importance and the likelihood that they will reoccur. (See *Apex Oil Co. v. Henkhaus* (1983), 118 Ill. App. 3d 273, 454 N.E.2d 1032.) This exception to the waiver rule is inapplicable here. Our supreme court has limited the application of this exception to those cases where all factual matters

necessary to the determination of the question are presented in the record before the court. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 335 N.E.2d 448.) In the instant case, it is unclear whether defendant was denied permission to call her attorney prior to refusing to take the breathalyzer test. Defendant testified that she requested permission to call her attorney upon her arrival at the police station about an hour before she was asked to take the test. She said that this request was denied. Officer Vallas was not specifically asked whether defendant made such a request at that time. Vallas did testify, and the trial court found that defendant did not request permission to contact her attorney when she was asked to submit to the breathalyzer test until immediately after her refusal, and that at that time she was granted such permission. Vallas also testified that during the course of the evening defendant made several requests to talk to an attorney and was given several opportunities. The lack of clarity on this point was caused by defendant's failure to raise this issue in the trial court. Under these circumstances, we will not relax the waiver rule.

■ Defendant's final contention is that the proceedings under the implied-consent law should have been dismissed because she subsequently pleaded guilty to DUI. At no time in the trial court did defendant request a dismissal. Accordingly, this contention has been waived. Even if we were to relax the waiver rule, it would not help defendant. In *People v. Shaffer* (1985), 134 Ill. App. 3d 548, 481 N.E.2d 61, the appellate court held that a trial court may not dismiss an implied-consent proceeding because of the defendant's plea of guilty to the underlying DUI charge.

For the foregoing reasons, the decision of the circuit court of Du Page County is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.