VILLAGE OF OREGON, Plaintiff-Respondent,

v.

John William BRYANT, Defendant-Appellant-Petitioner. [Case No. 92–0104.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Bradley T. BRANTON, Defendant-Respondent-Petitioner. [Case No. 92–0574–CR.]

CITY OF MADISON, Plaintiff-Appellant,

v.

Gary A. KOPP, Defendant-Respondent-Petitioner. [Case No. 92–0575.]

Supreme Court

*Nos. 92–0104, 92–0574–CR, 92–0575. Oral argument September 8, 1994.—Decided December 15, 1994.*

(Also reported in 524 N.W.2d 635.)

For the defendant-appellant-petitioner John William Bryant and defendant-respondent-petitioner Bradley T. Branton there were briefs by *Alan G. Habermehl* and *Kalal & Associates,* Madison and oral argument by *Alan G. Habermehl.*

For the defendant-respondent-petitioner, Gary A. Kopp, there were briefs *John P. Koberstein* and *Koberstein Law Office,* Madison and oral argument by *John P. Koberstein.*

For the plaintiff-respondent, Village of Oregon, there was a brief by *Timm P. Speerschneider, Margaret A. Satterthwaite* and *DeWitt Porter,* Madison.

For the plaintiff-appellant, State of Wisconsin, the cause was argued by *Jerome S. Schmidt,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the plaintiff-appellant, City of Madison, the cause was argued by *Sally Probasco,* assistant city attorney, with whom on the brief was *Marinus J. Petri,* assistant city attorney, and *Eunice Gibson,* city attorney.

HEFFERNAN, CHIEF JUSTICE. On these consolidated appeals from three separate cases the court of appeals, relying on its own precedents, decided that none of the defendants had been misinformed about his right to a second test for blood alcohol content under

the Implied Consent Law, sec. 343.305, Stats. Hence, there was no denial of due process. Accordingly, the court of appeals, in an unpublished opinion dated September 30, 1993, reversed the order to suppress intoxilyzer test results in *State v. Branton* and reversed the judgment and order in *City of Madison v. Kopp,* and it affirmed the judgment and order in *Village of Oregon v. Bryant.*[1] The effect of the court of appeals decision was to validate intoxilyzer tests in each case and to allow their admission in evidence.

We affirm the decision of the court of appeals and conclude that the information provided to each of the defendants was in accordance with Wisconsin's Implied Consent Law, sec. 343.305, Stats., and that such information accurately informed each defendant of this right under the law. Because we hold that the use of the warning forms did not violate due process, we conclude that there is no basis for suppression of the intoxilyzer results[2] in these defendants' criminal or civil forfeiture proceedings.

The facts common to all defendants are undisputed. Each was stopped by a police officer; and, in respect to each, it was determined by the officer that

---

[1] The order in *Branton* and the judgment and order in *Kopp* were issued by Dane County Circuit Judge Angela B. Bartell. The judgment and order in *Bryant* was issued by Dane County Circuit Judge Daniel R. Moeser. A fourth case, *State v. Helm* (No. 92–2545–CR), was also decided by the court of appeals. The latter, which was decided by LaCrosse County Circuit Judge Dennis G. Montabon, is not before us on review.

[2] Whether the forum is an action for civil forfeiture or a criminal OWI prosecution, assuming the sufficiency of the evidence, the action could proceed and the individual could be fined or convicted, even if there was no BAC test admitted into evidence at trial.

there was probable cause to request the defendant to submit to an alcohol test administered by an Intoxilyzer 5000 machine.

Each defendant was read the statutorily prescribed "Informing the Accused" form.

It is not disputed that the form complies with the statutory mandate of sec. 343.305(4), Stats. The form used and orally read to each defendant provides:

> You are deemed under Wisconsin's Implied Consent Law, s. 343.305 Wis. Stats. to have consented to tests of your breath, blood or urine for the purpose of determining the presence or quantity of alcohol or other drugs in your blood or breath.
>
> If you refuse to submit to any such tests, your operating privilege will be revoked under s. 343.305 Wis. Stats. and if you were driving or operating or on duty time with respect to a commercial motor vehicle you will be issued an out-of-service order for the 24 hours following your refusal.
>
> In addition to the test or tests to which you have submitted at the request of a law enforcement officer, after submitting to these tests, you may request the alternative test the law enforcement agency is prepared to administer or you may request a reasonable opportunity to have any qualified person of your choice administer a chemical test at your expense for the purpose specified under s. 343.305(2) Wis. Stats.
>
> If you take one or more chemical test(s) and the results of any test indicate an alcohol concentration of 0.10 or more, in addition to other penalties which may be imposed, your operating privilege will be administratively suspended as provided under s. 343.305(7)(a) Wis. Stats. The statutorily prescribed penalties resulting from a conviction for driving

with an alcohol concentration of 0.10 or more include a fine or forfeiture, suspension or revocation of driving privileges, points added to your driving record, and a possible jail sentence in the event you are a repeat offender. See s. 343.30 and s. 345.65 Wis. Stats.

Each defendant submitted to the intoxilyzer test. The test of each defendant resulted in a reading in excess of the permissible alcohol content. Each defendant was told that his results were in excess of legal limits, and each was told of the right to a second test. No defendant asked for an additional test, because each asserts that paragraph 4 of "Informing the Accused" form misstates the effect of a second test, if that option were accepted, and deters a request for an additional test. The allegedly crucial misstatement provides in part:

If you take one or more chemical test(s) and the results of *any* test indicate an alcohol concentration of 0.10 or more, in addition to other penalties which may be imposed, your operating privilege will be administratively suspended as provided under s. 343.305(7)(a) Wis. Stats. [Emphasis supplied.]

The defendants assert that this paragraph misstates the law and this admonition has the effect of telling them, "Don't bother about another test if the initial test is in excess of the legal limit. If you have already had *any* test that shows excessive alcohol concentration, your operating privileges will be suspended."

Thus, it is asserted that the "Informing the Accused" form in fact misinformed them of their rights, because other portions of the Informed Consent Law indicate that additional tests that show less than the

prohibited amount may result in no actual suspension of driving privileges.[3]

It was argued on appeal and on this review that the "Informing" statement is inaccurate and misleading because another portion of the Implied Consent Law provides for a review procedure and that the form given to the accused states that review must consider "[i]f one or more tests were administered in accordance with this section, whether *each* of the test results indicate the person had a prohibited alcohol concentration." Section 343.305(8)(b)2.d, Stats. [Emphasis supplied.]

Thus, it is argued, the "Informing the Accused" form deters the defendant from knowing that, if he takes additional tests and any of those test results are not within the prohibited range, "the administrative suspension of the person's operating privilege [may] be rescinded." Section 343.305(8)(b)5.[4]

The court of appeals accepted the reasoning advanced by the defendants, that the information given and the statutes themselves were contradictory and confusing. The court, however, concluded that the question had already been resolved against the defend-

---

[3] It should be noted that none of the defendants assert any confusion at the scene with respect to their rights. We are confronted, however, with a question of law: Whether the information given accurately apprised the defendants of their right to a second test, not whether any one of them subjectively was confused by the admonitions.

[4] Whether the failure of one reliable alcohol test to show a prohibited BAC in itself mandates the rescission of a suspension is not at issue in this case and is not specifically argued. We therefore do not herein conclude that rescission of the suspension is automatic. The parties seem to agree that it is, but we take no position on the question.

ants by a published opinion of the court of appeals in *State v. Piskula,* 168 Wis. 2d 135, 483 N.W.2d 250 (Ct. App. 1992), and that, under explication of the role of the court of appeals in this court's opinion, *In re Court of Appeals of Wisconsin,* 82 Wis. 2d 369, 263 N.W.2d 149 (1978), it was powerless to overrule the *Piskula* decision, although it now would conclude the analysis therein was incorrect.[5]

The court of appeals would reach that conclusion by examining sec. 343.305(7)(a), Stats., and comparing it to sec. 343.305(8)(a). Section 343.305(7)(a) provides:

> If a person submits to chemical testing administered in accordance with this section and any test results indicate a prohibited alcohol concentration, the law enforcement officer shall report the results to the department and take possession of the person's license and forward it to the department. The person's operating privilege *is* administratively suspended for 6 months. [Emphasis supplied.]

The court of appeals points out a seeming contradiction in sec. 343.305(8)(a), Stats., which provides, after administering a test which shows prohibited alcohol content, that:

---

[5] We do not resolve this question of appellate practice, for we conclude *Piskula* was, and is, correct. Although *Piskula* involved judicial review of an administrative suspension of a license revocation and this review involves an action for civil forfeiture and criminal OWI prosecutions, we rely on *Piskula* for the proposition that the information provided to the defendants, which is the same today as it was when *Piskula* was decided, did not mislead defendants as to the merits of an alternative test and therefore, that they were properly informed of the law. *See State v. Piskula,* 168 Wis. 2d at 143.

687

The law enforcement officer shall notify the person of the administrative suspension under sub. (7)(a). The notice shall advise the person that his or her operating privilege *will* be administratively suspended and that he or she has the right to obtain administrative and judicial review under this subsection. This notice of administrative suspension serves as a 30-day temporary license. An administrative suspension under sub. (7)(a) becomes effective at the time the 30-day temporary license expires . . . [Emphasis supplied.]

From this difference in language—the word "is" in (7)(a) and the words "will be" in (8)(a)—the court of appeals concludes that the information that a law enforcement officer is required to give the accused deters an accused from seeking an additional test once any test (the initial test) shows an impermissible BAC.

This superficially persuasive argument is fallacious, for it fails to appreciate the nature of the process dictated by the Implied Consent Law.

We see no contradiction or inconsistency in the various provision of sec. 343.305, Stats. When the section is carefully considered, it is apparent that the legislature has formulated a consistent and understandable procedure.

The basic error of the court of appeals in the decision under review—that there was error in *Piskula* and other cases it felt bound to follow—is its misconception that the administrative suspension was the product of the review procedure before a Department of Transportation examiner. To the contrary, the administrative suspension is imposed by the officer when he has determined, as the result of a chemical test, that the accused demonstrates a prohibited BAC. Section 343.305(4)(c)1, Stats., recites that, when the results of

any test indicate a prohibited BAC, the person's operating privilege will be suspended. It is clear that this language makes the legal suspension immediate.

If there were any doubt that the administrative suspension is imposed by the law enforcement officer, that doubt is dispelled by the references to the administrative review that may be undertaken at the option of the accused. If the examiner for the department, after presentation of the evidence, concludes that "the criteria for administrative suspension have not been satisfied . . . the examiner shall order that the administrative suspension of the person's operating privilege be rescinded . . ." If the criteria are satisfied, "the administrative suspension shall continue." In the event the proper notices are not sent, "the administrative suspension is vacated." Section 343.305(8)(b)5., Stats.

It could hardly be clearer that, under the statutory scheme, it is the law enforcement officer who imposes the administrative suspension. Simultaneously, he takes the accused's operator's license and issues the form that constitutes a temporary driving permit which is valid for thirty days. The effect of this procedure authorized by the statute is to suspend operating privileges by the administrative action of the officer but to stay the effect of the suspension for thirty days to enable the accused to have a Transportation Department review of the already imposed suspension.

When the statutory framework is carefully examined and viewed as a continuum—tests and administrative suspension by law enforcement, review by the department, and possible judicial review—there is no inconsistency within the provisions. The statute makes sense; and of course, it makes no sense to assert

that a police officer cannot suspend an operator's license and that only the Department of Transportation can do so. It is clear that the legislature had delegated the initial authority to a law enforcement officer to administratively suspend an operator's license. That suspension by a law enforcement officer, by operation of law, becomes final without the intervention of the department if no review is taken from the officer's action.

Nevertheless, the court of appeals asserts that the forms that are given to the accused do not provide notice to an accused of the potential value of additional testing because they are not given to the accused until after the testing process is complete, *i.e.,* until after the initial test shows a prohibited BAC.

As has been held by the court of appeals opinions in *City of Mequon v. Hess,* 158 Wis. 2d 500, 463 N.W.2d 687 (Ct. App. 1990), *State v. Muente,* 159 Wis. 2d 279, 464 N.W.2d 230 (Ct. App. 1990), and *State v. Piskula,* 168 Wis. 2d 135, 483 N.W.2d 250 (Ct. App. 1992), the administrative suspension will be imposed forthwith if one of the tests taken on the scene exceeds permissible limits. As *Piskula* and *Hess* point out, a subsequent test showing a permissible alcohol content is relevant only at the department review hearing as a decision point for determining whether the officer-imposed suspension should be rescinded.

Nevertheless, the question remains: Even if there is an immediate suspension by virtue of the initial test, should not an accused be made aware that another test which shows a permissible alcohol content may have the effect of rescinding the officer's administrative suspension thereby cancelling a putative six-months suspension—and without the loss of any driving privi-

lege because of the issuance of a temporary operator's permit issued pending a petition for review.

An examination of the statutes and the forms issued pursuant thereto that were given to each defendant demonstrates that such notice was given. Prior to submitting to any test, the accused is told that, after submitting to the requested test, the accused may request that an alternative test be administered at the government's expense.

It is clear from the "Informing" document read to the accused that the alternate test may be asked for only after compliance with the test requested by the officer under the Implied Consent Law. It is after the accused has been told and knows that he has tested in excess of a permitted BAC that he has the opportunity to have another test. Thus, at this post-initial testing juncture, the accused has been fully informed and knows that he will be administratively suspended because he has failed the first test. There is no additional jeopardy threatened by asking for another test. The accused has absolutely nothing to lose.

Moreover, he is then given the form titled, "Administrative Review Request." This form in par. (5) points out that one of the issues on review is "[w]hether each of the test results indicates that the person had a blood alcohol concentration of 0.1% or more."

Certainly, this statutorily mandated sequence of events apprised the accused that an additional test that shows a less than 0.1% BAC is relevant to the review and may be useful in obtaining the rescission of the administrative suspension imposed by the officer.

██

We conclude that each defendant in the instant case was told of the absolute right to have a second test and was told that a second test could be a criterion for

rescission of his stayed suspension. Every incentive was afforded the accused to take the second test, particularly when it is clear that each accused was given the information that the results of the initial test, unless countered, would result in a suspension. It also should be noted that, under the statutory structure of the administration of the Implied Consent Law on the scene, all of the forms are given to the accused within minutes of the taking of the initial intoxilyzer test. A request for a second test made at that time clearly would fall within the three-hour period allowing automatic admissibility. Section 343.305(5)(a), Stats.

Accordingly, we conclude that the only basis asserted as a violation of due process—that the accused was either misinformed or the statutes were hopelessly confused and contradictory—is without foundation. The process guaranteed by the statutes is an appropriate one and the statutory protections and admonitions were afforded each of the defendants in the cases on review.

Nevertheless, it would appear that, although the Implied Consent Law is designed to make prosecution of intoxicated drivers easier, much litigation has ensued since its passage. This litigation on the same issue is evidenced by the numerous decisions cited and referred to in the court of appeals opinion in this case. There should be an end to the continued controversy and questions of the law that have been raised in the courts since the passage of the Implied Consent Law.

This court, although sustaining the procedures employed here by the police officers and although we affirm the court of appeals decision, nevertheless find it apparent that the forms used by the Department of Transportation could be simplified. We do not attempt to design such forms or to devise a "Miranda-like" card

to guide the Department of Transportation law enforcement officers to inform an accused. But the department should do so. While in the retrospection of a judicial setting, the provisions of the Implied Consent Law are clear, it must be remembered that the accused, who is the recipient of the information, has been determined, to a degree of probable cause, to be under the influence of alcohol. Hence, reasonableness under the circumstances dictates that the directions and warnings to the accused be as simple and straightforward as possible. The accused should be plainly told not only that a plus 0.1% reading will result in an immediate, though stayed, administrative suspension, but that a second test can be had at the accused's request, at no expense to the accused, and may, if the results do not show an excessive BAC, on review, cause the rescission of the officer-imposed suspension prior to the time the actual loss of driving privileges would take effect.

We affirm the court of appeals on the grounds that the basic rational of *State v. Piskula,* on whose precedent the court of appeals relied, is correct. We hold that the accused drivers in each of the cases before us were properly warned of the consequences of submitting to the intoxilyzer test for BAC and were properly and timely informed of the opportunity and potential advantage of submitting to an alternative test. Moreover, we hold that the entire process, when viewed as it must be as a continuum, is not contradictory or confusing. We point out, however, that simpler warnings can be fashioned to obviate unnecessary litigation. We emphasize also that in none of the cases before us is there any claim on this review that the drivers were subjectively confused. We merely determine as a matter of law that the statutes are consistent and not contradictory, nor are the regulations interpreting

them. None of the information given to the accused by Department of Transportation forms constituted misinformation or failed to provide sufficient information. The blood alcohol test in each case was admissible.

*By the Court.*—Decision affirmed.