ON MOTION FOR CLARIFICATION, REHEARING, REHEARING EN BANC AND CERTIFICATION
 

 TAYLOR, J.
 

 We deny appellee’s motion for rehearing, rehearing en bane, and certification, but substitute the following opinion in place of our previously issued opinion, 35 Fla. L. Weekly D666 (Fla. 4th DCA Mar.24, 2010), to clarify the procedural history contained in the first paragraph of page one of the opinion.
 

 These consolidated appeals present the same issue concerning whether the defendants’ refusal to submit to a breath test, following their arrest for driving under the influence (DUI), should have been suppressed. The defendants, Charles Kurec-ka and James J. Power, moved to suppress evidence of their refusal, based on their mistaken belief that they had a right to counsel before deciding whether to submit to breath testing. A circuit court judge temporarily sitting as a county court judge denied Kurecka’s motion to suppress, and Kurecka subsequently appealed his DUI conviction. A county court judge granted Power’s motion, and the state appealed the suppression order. Because the orders under review contained a question certified to be of great public importance pursuant to Florida Rule of Appellate Procedure 9.030(b)(4), the appeals were transferred to our district court of appeal. After accepting jurisdiction in these cases, we consolidated them for review.
 

 Kurecka v. State
 

 Charles Kurecka was involved in an automobile accident on August 24, 2005. Officer Joseph Rubin of the Greenacres Department of Public Safety responded to the scene of the accident and conducted a DUI investigation. After performing field sobriety exercises, Kurecka was arrested for DUI and transported to the Green-acres Public Safety Department. At the police station, he refused to submit to an alcohol breath test. Kurecka later filed a pre-trial motion to suppress his refusal.
 

 At the hearing on Kurecka’s motion to suppress his refusal to submit to breath testing, the parties stipulated to the facts recited in the order denying the motion to suppress:
 

 On August 24, 2005, after being arrested for DUI, Defendant was requested by law enforcement to submit to breath testing. Upon hearing the request, Defendant requested to speak with an attorney. Prior to requesting Defendant to submit to breath testing, law enforcement had not advised Defendant of his
 
 Miranda
 
 rights. As such, Defendant’s desire for counsel was not premised upon law enforcement advice, but his own belief that he needed to speak with an attorney. Law enforcement did not inform Defendant that he did not have a
 
 *1054
 
 right to speak with counsel prior to deciding to take or refuse breath testing. Because he wanted to speak with counsel first, Defendant refused to submit to breath testing.
 

 During argument on the motion to suppress, defense counsel conceded that Ku-recka did not have a right to a lawyer before deciding whether to take a breath test. He further acknowledged that Ku-recka was not misled by law enforcement regarding his right to speak with an attorney and that his confusion stemmed from his own misunderstanding of the law. Nonetheless, he argued that Kurecka’s refusal should not be admitted at trial as evidence because his refusal does not show consciousness of guilt, but mere confusion on his part.
 

 In denying the motion to suppress, the court declined to apply the confusion doctrine to Kurecka’s refusal to submit to breath testing since his confusion about the right to counsel did not derive from any action by law enforcement. Citing
 
 State v. Wymer,
 
 4 Fla. Supp. 113a (Fla. Hillsborough Cty. Ct.1995), the court denied the motion to suppress and certified a question of great public importance. We rephrase the question as follows:
 

 IF THE CONFUSION DOCTRINE EXISTS IN FLORIDA, DOES IT APPLY WHEN LAW ENFORCEMENT FAILS TO ELIMINATE A DEFENDANT’S CONFUSION ABOUT THE RIGHT TO COUNSEL BEFORE SUBMITTING TO A BREATH TEST EVEN THOUGH LAW ENFORCEMENT DID NOT CAUSE THE CONFUSION?
 

 We answer the question in the negative and affirm the order denying Kurecka’s motion to suppress his refusal to submit to the breath test.
 

 At Kurecka’s trial, the state argued during closing that appellant’s refusal to submit to the breath test showed consciousness of guilt, stating:
 

 And, why does he refuse the breath test? Because he knows, he knows he’s over the legal limit, he knows he’s impaired, he knows his normal faculties are impaired and that’s why he refuses to give a sample of his breath for testing.
 

 In his closing argument, Kurecka offered the following explanation for refusing to submit to a breath test:
 

 DEFENSE ATTORNEY: The State wants you to believe and wants you to use the evidence of the refusal to submit to testing as an indication of guilt. I’m sorry, that’s not what the evidence supports. Rubin asked Chuck Kurecka to submit to the breath test. He asked him, something that has a legal ramification. And, Chuck Kurecka made an intelligent, rational, sober, request. I’d like to talk to a lawyer.
 

 Now, whether he was or wasn’t entitled to talk to a lawyer at that point is not at issue here. What is at issue, is his state of mind. I’d like to talk to a lawyer. Did Rubin say to him, sir you can’t talk to a lawyer. You’re not allowed to talk to a lawyer? Did he say wait, let me go get a phone, you can talk to whoever you want? No, he said nothing about it. And, simply said if you refuse your license is suspended etcetera.
 

 The jury found Kurecka guilty of DUI causing injury to person or property.
 

 State v. Power
 

 James J. Power was arrested for DUI on December 23, 2000 after he was stopped for speeding. He was taken to the Breath Alcohol Testing Center for breath testing and questioning. In response to routine booking questions and a request to submit to breath testing, Power
 
 *1055
 
 responded that he wanted a lawyer. He moved to suppress the question-and-answer session and his refusal to submit to breath testing.
 

 At the hearing on Power’s motion to suppress, the state played a videotape of the events that took place at the breath testing facility. The video recording showed that Sergeant Gray asked Power, a former police officer, his name, current address, date of birth, and height and weight. To each question Power responded either, “I want a lawyer” or simply “A lawyer.” Then the following exchange took place:
 

 Q: All right. I am now requesting you to submit to a true test of your breath for the purpose of determining your alcohol content? Will you submit to the breath test?
 

 A: Lawyer.
 

 Q: Lawyer? That means no, right?
 

 A: Get a lawyer.
 

 Q: Okay. I’m gonna assume that by not saying yes you’re saying no, you want a lawyer.
 

 A: A lawyer.
 

 Q: Am I correct in what I’m assuming?
 

 A: A lawyer, yes.
 

 The sergeant read the implied consent law to Power and advised him of the consequences of refusing the test, including suspension of his license and admission of his refusal as evidence in any criminal proceeding. Sergeant Gray did not repeat his request for Power to take the breath test; however, he interpreted Power’s actions as a refusal to submit to breath testing. The officer then read Power his
 
 Miranda
 
 rights. After ascertaining that Power understood them, he asked him if he wanted to answer any questions. Power shook his head to indicate a negative response, and when asked if he had anything to add, he stated, ‘Yea, I want a lawyer.”
 

 At a continuation of the suppression hearing, Sergeant Gray testified that Power was not read
 
 Miranda
 
 warnings before his arrest or before the request for a breath test. He said that he knew Power was not entitled to counsel prior to submitting to breath testing, but acknowledged that he did not advise Power of this fact when he requested counsel. Sergeant Gray testified that Power was briefly employed as a police officer; however, he did not know the length of Power’s law enforcement service or the extent of his training and experience.
 

 The trial court granted Power’s motion to suppress. First, the court ruled that the question-and-answer session that followed the
 
 Miranda
 
 warnings had to be suppressed because Power had previously invoked his right to counsel. Then, as to Power’s refusal to submit to breath testing, the court stated the following:
 

 There is no question that Defendant, in the Instant Cause, made his belief that he was entitled to counsel known to Sergeant Gray. However, it is equally without question that Sergeant Gray did not cause Defendant’s incorrect belief. Thus, the Court must determine if a mistaken belief in the right to counsel prior to breath testing, not created by law enforcement but made known to law enforcement, results in the suppression of the refusal to submit to breath testing, if law enforcement does not correct the Defendant’s mistaken belief. The Court believes this question can only be answered in the affirmative.
 

 The trial court, in essence, applied the confusion doctrine and expanded it, reasoning that there was no logical basis for distinguishing between defendants who were confused by law enforcement and those whose internal confusion was left
 
 *1056
 
 uncorrected by law enforcement. The court then certified the following as a question of great public importance:
 

 DOES A DEFENDANT’S MISTAKEN BELIEF IN THE RIGHT TO COUNSEL PRIOR TO BREATH TESTING, NOT CREATED BY LAW ENFORCEMENT, BUT MADE KNOWN TO LAW ENFORCEMENT, REQUIRE THE SUPPRESSION OF THE REFUSAL TO SUBMIT TO BREATH TESTING IF LAW ENFORCEMENT DOES NOT CORRECT THE DEFENDANT’S MISTAKEN BELIEF?
 

 We answer the question in the negative and reverse the order suppressing Power’s refusal to submit to the breath test.
 

 Analysis
 

 “A trial court’s ruling on a motion to suppress is clothed with a presumption of correctness on appeal, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.”
 
 State v. Hebert,
 
 8 So.3d 393, 395 (Fla. 4th DCA 2009) (citing
 
 State v. Manuel,
 
 796 So.2d 602, 604 (Fla. 4th DCA 2001)). In this case, the underlying facts are undisputed. Because there is no issue as to the facts of this case, but rather a question of law, we apply a
 
 de novo
 
 standard of review to the court’s application of the law to the facts.
 
 Id.
 

 It is well-settled in Florida that a person arrested for DUI does not have the right to consult with counsel before deciding whether to submit to a breath test.
 
 Nelson v. State,
 
 508 So.2d 48, 49 (Fla. 4th DCA 1987) (citing
 
 State v. Hoch,
 
 500 So.2d 597, 599-600 (Fla. 3d DCA 1986) (holding that (1) administration of a breath test is not a critical stage of the proceedings to which a Sixth Amendment right to counsel attaches; (2) the results of a breath test are physical evidence — not testimonial— and thus no Fifth Amendment right to counsel attaches; and (3) because an accused has no right to refuse to take the test — only an option to refuse — there can be no denial of due process));
 
 State v. Burns,
 
 661 So.2d 842, 848 (Fla. 5th DCA 1995) (holding that a defendant’s refusal to submit to a breath test is admissible because administering a breath test and having a defendant perform a field sobriety task on videotape are “nothing more than the collection and preservation of physical evidence ... and do not constitute a crucial confrontation requiring the presence of defense counsel”).
 

 The issue debated here is whether a DUI suspect, who exhibits a mistaken belief that he has a right to consult with counsel before deciding whether to take the breath test, is entitled to have his refusal to take the test excluded as evidence of consciousness of guilt when law enforcement failed to correct his misunderstanding, or confusion, even though the confusion was not created by law enforcement.
 

 Under a judicially created exclusionary rule, known as the “confusion doctrine,” “a licensee’s refusal to submit to [a] breath test will be excused if, due to a prior administration of the Miranda warnings, the licensee believes that he or she had the right to consult with counsel prior to taking a breath test.”
 
 Ringel v. State,
 
 9 Fla.Supp. 678a (Fla. 18th Cir.Ct.2002). The doctrine is usually invoked by drivers as a defense to a license suspension or revocation. In most instances, the drivers assert that, because the police officer contemporaneously advised them of their
 
 Miranda
 
 rights (right to refuse interrogation and to have an attorney present at all stages of an interrogation) and read them the requirements and sanctions of the implied consent law, they believed that they could
 
 *1057
 
 consult with counsel before deciding whether to submit to breath testing. They contend that they should not be held strictly accountable for refusing to take a breath test and suffer a license suspension or revocation when the officer confused them about their right to counsel.
 
 See, e.g., Calvert v. State,
 
 184 Colo. 214, 519 P.2d 341 (1974).
 

 The confusion doctrine has been adopted by courts in several states and considered by a few courts in Florida. Florida courts that have applied the doctrine have rendered conflicting opinions on its applicability and scope.
 
 See Ringel,
 
 9 Fla. Supp. 678a;
 
 State v. Alves,
 
 3 Fla. Supp. 553a (Fla. Orange Cty. Ct.1995);
 
 Wymer
 
 at 113a. The only Florida district court to consider the concept did so in the context of a license suspension administrative hearing.
 
 See Dep’t of Safety & Motor Vehicles v. Marshall,
 
 848 So.2d 482 (Fla. 5th DCA 2003). In
 
 Marshall,
 
 the fifth district did not decide whether the confusion doctrine existed in Florida. It determined only that the evidence in that case did not support the licensee’s claim that she was told by police that she could consult with an attorney prior to deciding whether to submit to a breath test. Consequently, the court quashed the circuit court’s decision to reverse an administrative final order of driver’s license suspension.
 

 As the eighteenth circuit noted in
 
 Ringel,
 
 courts that have addressed the confusion doctrine have done so with mixed results, from outright rejecting it to liberally applying it to excuse a defendant’s refusal to submit to a breath test when law enforcement failed to affirmatively advise the driver that
 
 Miranda
 
 rights do not apply to the decision to take the test. The defendants in this appeal seek application of the doctrine to exclude evidence of their refusal at trial. According to the defendants, confusion over one’s rights, regardless of the source, negates “consciousness of guilt,” which is the evidentiary basis for admitting the refusal.
 

 In
 
 Ringel,
 
 the driver sought certiorari review of an order of the Department of Highway Safety and Motor Vehicles upholding the suspension of his license for refusal to submit to a breath test. He testified at his formal review hearing that he did not take the breath test because he thought he was entitled to an attorney prior to deciding whether to take the test, due to the previously administered
 
 Miranda
 
 warnings. The arresting officer had given him
 
 Miranda
 
 warnings at the scene and then later read the implied consent warning at the police station before he refused to take the test.
 

 The circuit court found persuasive the reasoning of those jurisdictions that excused the refusal to submit to the test when the accused was confused about his rights by the actions of a law enforcement officer and actually conveyed that confusion to the officer. The court observed as follows:
 

 Generally these jurisdictions require the licensee to express confusion about his or her rights when asked to take a breath test, typically by requesting consultation with an attorney first. If the licensee does express confusion, law enforcement must explain to the licensee that Miranda rights do not apply to the decision to take a breath test and that the licensee is not entitled to speak to an attorney prior to deciding whether to take the test. If law enforcement does not provide this explanation and the licensee testifies that he or she refused to take the test because of the mistaken impression that he or she could do so without suffering adverse consequences, due to the prior administration of the Miranda warning, then the refusal will
 
 *1058
 
 be deemed to be unknowing and involuntary and will not be held against the licensee.
 

 Ringel,
 
 9 Fla. Supp. 678a.
 

 Incorporating this approach into Florida’s implied consent procedures, the circuit court stated:
 

 In Florida, a licensee is given the implied consent warning prior to being requested to submit to a breath test. If, after receiving the implied consent warning, the licensee is still confused about the applicability of Miranda rights to the decision to take a breath test, the licensee should make that confusion known to law enforcement, so that law enforcement is aware that further explanation is necessary.
 

 Id.
 

 In
 
 Ringel,
 
 however, because the driver did not testify that he communicated his confusion to law enforcement, the court found that his refusal to take a breath test should not be excused. The court therefore denied his petition.
 

 In
 
 Alves,
 
 the county court found that the confusion doctrine applied to the facts in that case because the defendant was read his
 
 Miranda
 
 rights, emphatically requested the opportunity to speak to a lawyer when he was requested to take a breath test, and it was never explained that the
 
 Miranda
 
 rights previously read were not applicable to the implied consent procedure for the breath test. The circuit court explained that “[i]f a defendant is led to believe by State action that he/she is taking a ‘safe harbor’ by taking a certain course of conduct, the exercise of such action by the defendant is inadmissible at trial.”
 
 Id.
 
 (citing
 
 South Dakota v. Neville,
 
 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983)). The court further stated that the defendant did not demonstrate consciousness of guilt since he was led to reasonably believe that he was exercising a right that did not actually exist.
 
 Id.
 

 In
 
 Wymer,
 
 the county court distinguished the facts in
 
 Alves
 
 and held that the confusion doctrine was limited to situations where the defendant is advised of his
 
 Miranda
 
 rights “and is
 
 then
 
 given implied consent advice, and when he thereafter asks for counsel, is told that he has no right to counsel with respect to this breath test,
 
 after
 
 having been told he has a right to counsel before making any statements.”
 

 Other states that have adopted the confusion doctrine, at least as a defense to license suspension or revocation, include Alaska, California, Colorado, Hawaii, Minnesota, Nebraska, New Jersey, North Dakota, and Pennsylvania.
 
 [1]
 
 Because some states recognize that the juxtaposition of the
 
 Miranda
 
 warnings (right to refuse interrogation and to have an attorney present at all stages of an interrogation) with the implied consent warnings (no right to refuse a test) is likely to induce confusion, they require that law enforcement always advise a defendant that the rights contained in the
 
 Miranda
 
 warnings do not apply to the breathalyzer examination; others require that law enforcement do so only if the defendant actually exhibits confusion.
 

 
 *1059
 
 In the State of Washington, so long as the defendant is advised that his refusal will lead to license suspension, the confusion doctrine does not apply.
 
 See State v. Staeheli,
 
 102 Wash.2d 305, 685 P.2d 591 (1984). Illinois has likewise chosen not to adopt the confusion doctrine because the wording of the Illinois implied consent statute does not require that a refusal to submit to a breath test be made with full knowledge of the defendant’s rights and the possible consequences.
 
 People v. Mucha,
 
 140 Ill.App.3d 788, 95 Ill.Dec. 42, 488 N.E.2d 1385 (1986). Similarly, Mississippi has decided not to adopt the confusion doctrine because its implied consent statute does not require a knowing refusal; confusion is immaterial as to the defendant’s rights once implied consent is read.
 
 Sheppard v. Miss. State Highway Patrol,
 
 693 So.2d 1326 (Miss.1997).
 

 Here, the defendants urge us to follow the approach of the Supreme Court of Pennsylvania, which expanded the confusion doctrine to require police officers to inform suspects who request a lawyer that the right to counsel does not apply to their decision to submit to breath testing. Power notes that, as recognized by the United States Supreme Court,
 
 Miranda
 
 warnings have become part of our national culture. As such, he argues, if a suspect incorrectly requests counsel even though
 
 Miranda
 
 rights have not been read, law enforcement should be required to advise suspects that
 
 Miranda
 
 rights do not apply to the taking or refusal of a breath test. The Supreme Court of Pennsylvania in
 
 Commonwealth, Department of Transportation v. O’Connell,
 
 521 Pa. 242, 555 A.2d 873 (1989), held that police officers have a duty to issue a warning that
 
 Miranda
 
 rights do not apply to the implied consent setting. The court stated:
 

 where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.
 

 Id.
 
 at 878.
 

 The court explained that its holding was prompted by concern that defendants confused by police conduct might be “misled into making uninformed and unknowing decisions to take the test.”
 
 Id.
 
 Later, the Pennsylvania Supreme Court extended the requirement of the
 
 “O’Connell
 
 warning” to situations where defendants had
 
 not
 
 been confused by a previous reading of the
 
 Miranda
 
 warnings.
 
 See Commonwealth, Dep’t of Transp. v. Scott,
 
 546 Pa. 241, 684 A.2d 539, 546 (1996);
 
 Commonwealth, Dep’t of Transp. v. McCann,
 
 533 Pa. 456, 626 A.2d 92, 93-94 (1993). However, the
 
 O’Connell
 
 line of cases spawned uncertainty and confusion in Pennsylvania’s implied consent laws and led to a flood of pre-trial litigation and appeals.
 
 See State v. Reitter,
 
 227 Wis.2d 213, 595 N.W.2d 646, 654 n. 10 (1999). The Wisconsin Supreme Court disagreed with Pennsylvania’s expansion of the confusion doctrine, stressing that the confusion doctrine is “premised on a reading of
 
 Miranda
 
 rights and a showing that the defendant actually was ‘confused.’”
 
 Id.
 
 at 654. It went on to explain that Wisconsin declined to adopt the confusion doctrine because their implied consent statute does not require that police officers advise suspects that the right to counsel does not attach in the implied consent setting; it said it was unwilling “to impose duties beyond those created by the legislature.”
 
 Id.
 
 at 655. The Wisconsin court stated:
 

 
 *1060
 
 Requiring officers to address nonexistent rights undercuts the “simple and straightforward” approach and risks confusing a potentially intoxicated defendant. If police move beyond the consistent statutory procedures and attempt to explain the law’s parameters, defendants will ignite the confusion defense. Explanations that exceed the statute’s language would case an “oversupply of information” and encourage “misled” defendants to challenge an officer’s compliance with statutory requirements. This result would frustrate the legislature’s intention to facilitate drunk driving convictions by offering defendants an avenue for litigating which presumed rights merit inclusion in an officer’s explanation.
 

 Id.
 
 at 655 (citing
 
 Ozaukee v. Quelle,
 
 198 Wis.2d 269, 542 N.W.2d 196 (1995) and
 
 Oregon v. Village of Bryant,
 
 188 Wis.2d 680, 524 N.W.2d 635 (1994)).
 
 [2]
 

 Similarly, Florida’s implied consent statute does not require police officers to advise persons arrested for DUI that the right to counsel does not attach to their decision to submit to the breath test. The statute requires only that the person be told that his failure to submit to the test will result in a suspension of the privilege to drive for a period of time and that a refusal to submit can be admitted at trial.
 
 [3]
 
 The implied consent statute establishes a presumption that those who have elected to enjoy the privilege of driving will, in turn, be required to submit to chemical testing if they are suspected of driving under the influence.
 
 See
 
 §§ 316.1932, 316.1933, and 316.1934, Fla. Stat.;
 
 State v. Busciglio,
 
 976 So.2d 15, 19-20 (Fla. 2d DCA 2008) (explaining that by exercising the privilege to drive, all drivers have already consented to taking a breath test pursuant to section 316.1932). The licensed driver in Florida, having already consented to the test, is thus not entitled to secure the advice of an attorney. Accordingly, excluding evidence based on a suspect’s misconception about the right to counsel prior to taking the breath test would be contrary to the legislative intent of Florida’s implied consent law.
 

 As we have explained in the past, the purpose of judicially imposed exclusionary rules is to “deter police misconduct resulting in constitutional violations, or its equivalent.”
 
 Rice v. State,
 
 525 So.2d 509, 511 (Fla. 4th DCA 1988) (holding that a deputy’s decision not to offer the defendant a pre-arrest breath test did not rise to the level of a constitutional violation). If a statute does not expressly list the exclusionary rule as a remedy, the Florida Supreme Court will “not infer that this
 
 *1061
 
 remedy is available for violations of the statute — regardless of its effectiveness as a deterrent or how desirable or beneficial we believe the exclusion may be.”
 
 Jenkins v. State,
 
 978 So.2d 116, 130 (Fla.2008). Courts must look at the terms of the statute at issue and the legislative intent rather than to “judge-made exceptions to judge-made rules” when deciding whether to suppress evidence.
 
 Id.
 
 (citing
 
 Davis v. State,
 
 529 So.2d 732, 733 (Fla. 4th DCA 1988)).
 
 See State v. Gunn,
 
 408 So.2d 647, 649 (Fla. 4th DCA 1981) (explaining that “[w]e find no legislative intent to impose a further sanction on the state by excluding as evidence the results of a chemical test administered to a driver (who has not affirmatively revoked the statutory consent) merely because of his not being informed, prior to testing, of the consequences should testing be refused.”);
 
 State v. Iaco,
 
 906 So.2d 1151, 1153 (Fla. 4th DCA 2005) (finding that suppression of physical evidence based on law enforcement’s intentional failure to read all the consequences of refusal to submit to test was prohibited).
 

 Here, the implied consent warnings read to the defendants did not violate any statutory or constitutional provisions, and they were not otherwise deficient so as to justify the extreme sanction of suppression. Moreover, under the implied consent statute, a defendant is not precluded from explaining to the jury his reasons for refusing to take the breath test. The defendant can himself introduce refusal evidence, along with other testimony concerning the circumstances of refusal, which may militate in his favor and counter the state’s consciousness-of-guilt argument.
 
 See Commonwealth v. Ruttle,
 
 388 Pa.Super. 262, 565 A.2d 477 (1989). A defendant can testify, as did Kurecka, that he refused to take the breath test — not to conceal evidence of his alleged intoxication — but because he believed he was wrongfully denied the right to first consult with an attorney.
 

 Conclusion
 

 Our research has not yielded any clear indication that the confusion doctrine is a recognized exclusionary rule or defense to a license suspension in Florida. And though we might agree that the confusion doctrine could properly be applied in circumstances where law enforcement created a defendant’s confusion about the right to counsel for breath testing, the cases before us do not present those circumstances. Here, the undisputed facts show that the defendants’ confusion was not officer-induced. The arresting officers did not advise the defendants of their
 
 Miranda
 
 rights before or during their reading of the implied consent law.
 

 As discussed above, our implied consent statute does not obligate a police officer to advise an accused that the right to counsel does not apply to the breath test setting. However, we see no harm in placing a minimal burden on officers to briefly explain this to suspects who request counsel when asked to submit to a breath test. Such an explanation would clear up a suspect’s confusion and ensure that refusals admitted into evidence at trial are, in fact, knowing and voluntary refusals that show “consciousness of guilt.” We believe that responsible police practice “should lead professional, courteous officers to advise insistent defendants that the right to counsel does not apply to chemical tests. Where a driver repeatedly asks to speak with an attorney, it would be courteous and simple for the officer to correct the accused’s mistaken assumptions.”
 
 Reitter,
 
 595 N.W.2d at 655.
 

 Of course, we cannot impose duties beyond those created by the legislature. The implied consent statute was enacted to assist in the prosecution of drunk drivers.
 
 *1062
 
 Determining whether informing a suspect that he does not have the right to an attorney for breath testing purposes — as part of the implied consent warning — supports or frustrates the goal of gathering evidence for these cases is a matter for the legislature to decide.
 

 For the reasons discussed above, we affirm the judgment of conviction in
 
 Kurecka v. State,
 
 4D08-2154, and reverse the order of suppression in
 
 State v. Power,
 
 4D08-3221.
 

 HAZOURI, J., and BEACH, MARCIA, Associate Judge, concur.
 

 [1]
 

 .
 
 See, e.g., Graham v. State,
 
 633 P.2d 211 (Alaska 1981);
 
 Calvert v. State,
 
 184 Colo. 214, 519 P.2d 341 (1974);
 
 McDonnell v. Dep’t of Motor Vehicles,
 
 45 Cal.App.3d 653, 119 Cal.Rptr. 804 (1975);
 
 Rust v. Dep’t of Motor Vehicles,
 
 267 Cal.App.2d 545, 73 Cal.Rptr. 366 (1968);
 
 State v. Severino,
 
 56 Haw. 378, 537 P.2d 1187 (1975);
 
 State v. Beckey,
 
 291 Minn. 483, 192 N.W.2d 441 (1971);
 
 Wiseman v. Sullivan,
 
 190 Neb. 724, 211 N.W.2d 906 (1973);
 
 Rawlings v. Police Dep’t of Jersey City, N.J.,
 
 133 N.J. 182, 627 A.2d 602 (1993);
 
 Ehrlich v. Backes, 477
 
 N.W.2d 211 (N.D.1991);
 
 Commonwealth, Dep’t of Transp. v. O'Connell,
 
 521 Pa. 242, 555 A.2d 873 (1989).
 

 [2]
 

 . Other states have rejected the Pennsylvania policy.
 
 Sheppard v. Miss. State Highway Patrol,
 
 693 So.2d 1326, 1330 (Miss.1997) (finding that implied consent statute only requires that suspect be told of the consequences of his refusal without discussion of his rights);
 
 People v. Mucha,
 
 140 Ill.App.3d 788, 95 Ill.Dec. 42, 488 N.E.2d 1385, 1389 (1989) (same);
 
 Schroeder v. Nevada, Dep't of Motor Vehicles,
 
 105 Nev. 179, 772 P.2d 1278, 1279 (1989) (same);
 
 State v. Stewart,
 
 286 Ga.App. 542, 649 S.E.2d 525 (2007) (rejecting claim that suspect's confusion requires suppression of his refusal to submit, explaining that to allow an intoxicated person to profess an inability to comprehend the implied consent law and thereby escape punishment for avoiding detection would render the law meaningless).
 

 [3]
 

 .
 
 See State v. Taylor,
 
 648 So.2d 701, 704-05 (Fla.1995) (recognizing the legislature's authority to enact statute that permits evidence of a driver’s refusal at any subsequent trial);
 
 State v. Bender,
 
 382 So.2d 697 (Fla.1980) (recognizing compelling state interest in highway safety justifies suspension of drivers’ licenses for refusing to take breath test);
 
 Smith v. State,
 
 681 So.2d 894 (Fla. 4th DCA 1996) (recognizing that refusal to submit to chemical test after reading of implied consent law is admissible).