CITY OF WAUPACA, Plaintiff-Respondent,

v.

Mark D. JAVORSKI, Defendant-Appellant.†

Court of Appeals

*No. 95–1033. Submitted on briefs November 10, 1995.—Decided November 16, 1995.*

(Also reported in 543 N.W.2d 507.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Michael C. Witt* of *Kalal & Associates* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Kaye E. Anderson*, assistant city attorney, of Waupaca, and *James E. Doyle*, attorney general, with *Jerome S. Schmidt*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

EICH, C.J.   Mark Javorski appeals from a judgment convicting him of operating a motor vehicle while intoxicated (OWI). He claims that the results of a blood test which comprised part of the evidence underlying his conviction should be suppressed, and his conviction overturned, because he was misinformed and misled as to his right to alternative testing under the implied consent law.

We agree that the manner in which Javorski was informed of the options available to him was erroneous and misleading with respect to the license suspension provisions of the implied consent law. But that does not, in our opinion, warrant suppression of an otherwise validly consented-to blood test at his trial on the substantive OWI charge. And because suppression is the only issue Javorski raises on this appeal, we affirm his conviction.

Javorski was injured in the collision that led to his arrest and was interviewed at the hospital by Waupaca Police Officer Robert Lewinski. After writing out the citation, Lewinski read Javorski the "Informing the Accused" form, which has been developed to inform persons arrested for OWI of their rights and options under the implied consent law. The portions of the form explaining the law applicable to Javorski's situation provide as follows:

> 1. You are deemed under Wisconsin's Implied Consent Law to have consented to chemical testing of your breath, blood or urine at this Law Enforcement Agency's expense. The purpose of testing is to determine the presence or quantity of alcohol or other drugs in your blood or breath.
>
> 2. If you refuse to submit to any such tests, your operating privilege will be revoked.
>
> 3. After submitting to chemical testing, you may request the alternative test that this law enforcement agency is prepared to administer at its expense or you may request a reasonable opportunity to have any qualified person of your choice administer a chemical test at your expense.
>
> 4. If you take one or more chemical tests and *the result of any test* indicates you have a prohibited

alcohol concentration, your operating privilege will be administratively suspended in addition to other penalties which may be imposed.

(Emphasis added.)

Javorski's appeal concentrates on the fourth paragraph and its relationship to the information given to arrested drivers who test positive for the presence of a prohibited alcohol level in their blood. After a positive test, the arresting officer provides the driver with a second set of documents: (1) a notice advising that the driver's license is being "administratively suspended" for six months and that the suspension may be stayed if a hearing is requested; and (2) a form for requesting a hearing which includes a list of "issues" to be considered by the hearing examiner in determining whether to maintain or "rescind" the administrative suspension. Section 343.305(7) and (8), STATS.[1] One such issue is "[w]hether *each of the test results* . . . indicate the person had a prohibited alcohol concentration." (Emphasis added.)

Upon his arrest, Javorski was given the initial Informing the Accused form. Officer Lewinski read the form to him, and Javorski signed it, indicating his consent to a test of his blood. The blood was drawn by a hospital technician and sent to a laboratory for testing. Javorski did not ask that any additional tests be administered.

The test results, indicating that Javorski had a blood alcohol concentration (BAC) of .261% at the time

---

[1] Under § 343.305(8)(b)5, STATS., if the hearing examiner "finds that the criteria for administrative suspension have not been satisfied or that the person did not have a prohibited alcohol concentration at the time the offense allegedly occurred, the examiner shall order that the administrative suspension of the person's operating privilege be rescinded . . . ."

of the accident, were forwarded to Lewinski several days later. Lewinski sent the results to Javorski, along with the second set of forms—the notice of the "administrative suspension" of Javorski's license, the notice of his right to an administrative hearing to contest the suspension, and the hearing request form listing the issues to be considered by the examiner. Javorski did not seek administrative review of his suspension.

Javorski entered a plea of not guilty to the OWI charge and moved to suppress the results of the blood test. He argued that because he was not notified that a contrary result obtained in an alternative test might assist him in having his license suspension rescinded until it was too late to have such a test administered, he was misled to his detriment by the procedures employed in his case.

After the trial court denied his suppression motion, Javorski stipulated that the court could hear and decide the merits of the OWI charge based on the arresting officer's report and the blood test results, reserving his right to appeal the issues argued at the suppression hearing. The trial court found him guilty of the charge and he appeals, renewing and expanding the arguments made in his suppression motion. He summarizes his position thusly:

> The defendant . . . was misinformed. He was told [in the Informing the Accused form] that if he submitted to a test and the result of "any" test "indicated a prohibited alcohol concentration" . . . then [his license] would be administratively suspended. He was *not* then told that he had a right to a hearing or that he had a right to contest at that hearing the imposition of an administrative suspension by showing that a second test had been taken and yielded a result below the prohibited level.

(Emphasis in original.)

Javorski points to the situation where a driver is asked to (and does) submit to a breath test, rather than a blood test, and he contrasts the two. If a breath test is administered, the results are available immediately and the driver is promptly informed of passage or failure; and if the test is failed, he or she is provided with the test results, the notice of suspension *and* the review form with its advice on the issues to be considered at the hearing. A person in such a situation, says Javorski, is thus immediately informed that there is a "benefit" to an alternative test—the possibility of rescission of the license suspension in the review proceedings—and he or she may request and obtain such a test immediately. Where, however, the officer requests that a blood test be taken—as was done in Javorski's case—the driver has no effective right to an alternative test because, by the time the results of the blood tests are known and the information on the administrative hearing is first given, it is far too late to have any other tests taken. This, he argues, is such a serious procedural defect that it violates his right to due process of law. We disagree.

Javorski's argument is based on *Village of Oregon v. Bryant*, 188 Wis. 2d 680, 524 N.W.2d 635 (1994). In that case the driver, Bryant, argued that the Informing the Accused form was inaccurate and misleading because, by stating that failing "any" test will result in suspension, it "deters the [driver] from knowing that [as stated in the administrative appeal form], if he [or she] takes additional tests and any of those test results are not within the prohibited range, 'the administrative suspension of the person's operating privilege [may] be rescinded.' " *Id.* at 686, 524 N.W.2d at 637 (quoting § 343.305(8)(b)5, STATS.).

The supreme court agreed with Bryant that one arrested for OWI "should . . . be made aware that another test which shows a permissible alcohol content may have the effect of rescinding the officer's administrative suspension thereby cancelling a putative six-months suspension . . . ." *Id.* at 690-91, 524 N.W.2d at 639. The court held that the implied consent procedures provided such notice.

> It is clear from the "Informing" document . . . that the alternate test may be asked for only after compliance with the test requested by the officer under the Implied Consent Law. It is after the accused has been told and knows that he has tested in excess of a permitted BAC that he has the opportunity to have another test. Thus, at this post-initial testing juncture, the accused has been fully informed and knows that he will be administratively suspended because he has failed the first test. There is no additional jeopardy threatened by asking for another test. The accused has absolutely nothing to lose.

> Moreover, he is then given the form titled, "Administrative Review Request." This form . . . points out that one of the issues on review is "[w]hether each of the test results indicates . . . a blood alcohol concentration of 0.1% or more."

> Certainly, this statutorily mandated sequence of events apprised the accused that an additional test that shows a less than 0.1% BAC is relevant to the review and may be useful in obtaining the rescission of the administrative suspension imposed by the [arresting] officer.

We conclude that [the] defendant . . . was told of the absolute right to have a second test[2] and was told that a second test could be a criterion for rescission of his . . . suspension.[3] Every incentive was afforded the accused to take the second test, particularly when it is clear that [the] accused was given the information that the results of the initial test, unless countered, would result in a suspension. *It also should be noted that . . . all of the forms are given to the accused within minutes of the taking of the initial intoxilyzer test.* A request for a second test made at that time clearly would fall within the three-hour period allowing automatic admissibility.[4]

*Accordingly*, we conclude that the only basis asserted as a violation of due process—that the accused was either misinformed or the statutes were hopelessly confused and contradictory—is without foundation.

*Village of Oregon*, 188 Wis. 2d at 691-92, 524 N.W.2d at 639-40 (emphasis added; citation omitted).

---

[2] This advice, as discussed above, is contained in the Informing the Accused form given to the driver immediately after the arrest.

[3] This second notice is found only in the administrative hearing forms which, as we also discuss above, are given to the driver only *after* the results of the test requested by the officer have been obtained. As Javorski points out, in cases where that first test is a blood test, the results are not known—and thus no "second notice" is given—until it is too late to have any other tests administered.

[4] Under § 885.235(1), STATS., a chemical analysis of the alcohol content in a person's blood is "admissible on the issue of whether he or she was under the influence of an intoxicant or had a . . . specified alcohol concentration if the sample was taken within 3 hours after the event to be proved."

Javorski argues that because he was requested to submit to a blood test and was unaware of the use of possible contrary results of additional testing at the administrative suspension hearing, he was not, in the *Village of Oregon* court's words, "made aware that another test which shows a permissible alcohol content may have the effect of rescinding the . . . suspension." *Id.* at 690, 524 N.W.2d at 639. Thus, says Javorski, the primary, if not the only, reason the defendant's arguments were rejected in *Village of Oregon* was—as the above-quoted language indicates—that he had received "immediate[ ]" notice of both his right to the alternate test *and* the effect such a test might have on the continuation or rescission of the "administrative suspension" of his license.

Responding, the State argues only that the language we have quoted above is *dicta* because the *Village of Oregon* court did not hold that a driver is correctly informed only if he or she receives both notices immediately upon completion of the first test. The statement is true as far as it goes: the court did not so hold. The court upheld the procedure and the notices against the driver's challenges largely because both notices were given in a timely fashion. Indeed, viewing the entire process "as a continuum," the court stated its holding as follows: "We hold that the accused . . . [was] properly warned of the consequences of submitting to the intoxilyzer test for BAC and [was] properly *and timely* informed of the opportunity *and potential advantage* of submitting to an alternative test." *Id.* at 693, 524 N.W.2d at 640 (emphasis added).

The problem in this case is that Javorski was *not* so informed and warned. He was required to submit to the particular test—a blood test—the officer requested on pain of the revocation of his license should he

refuse.[5] Section 343.305(2) and 343.305(9)(a), STATS. Because he complied with the request, even though he knew he had the right to have other tests taken, he was not informed that, should he fail the first test, alterna‑ tive testing may benefit him in that a contradictory result could aid in seeking rescission of the suspension imposed because of the first test. That was a breach in the "continuum" of implied consent procedures which, under the reasoning of *Village of Oregon*, led to a denial of Javorski's rights under the law.

■

We conclude, therefore, that the manner in which Javorski was informed of his rights and options under the implied consent law was inaccurate and misleading with respect to the application of the suspen‑ sion/revocation provisions of § 343.305, STATS., to one in his situation.

Javorski maintains that, given that holding, we must order suppression of the results of the blood test and, in turn, reverse his OWI conviction. Acknowledg‑ ing the supreme court's holding in *State v. Zielke*, 137 Wis. 2d 39, 41, 403 N.W.2d 427, 428 (1987), that non‑ compliance with the procedures set forth in the implied consent law "does not render chemical test evidence otherwise constitutionally obtained inadmissible" at the OWI trial, he argues that *Zielke* does not apply because, unlike the defendant in that case, he was the victim of a constitutional violation.

---

[5] The officer's choice of tests is apparently binding on the driver. Section 343.305(2), STATS., states that the officer "may designate which of the tests shall be administered first," and § 343.305(3)(a) and (am) each state that the officer "may request the [driver] to provide one or more samples of his or her breath, blood or urine for [testing]."

Javorski has not persuaded us, however, that a procedural failure in the application of the provisions of the implied consent law dealing with license suspension following an incriminating chemical test is an error of constitutional proportions—or even one that can (or should) render the test results inadmissible at trial on the underlying charge.

The failure to provide Javorski with accurate information as to the possible benefits of a second test in an administrative review of his temporary license suspension bears no relationship to either the validity of his consent to the first test or the merits of the OWI charge. It relates only to his ability to have a second test timely administered which, if it produced a result inconsistent with the first, might aid him in having his temporary license suspension rescinded. And there is nothing in the record, or in Javorski's briefs, to suggest that the manner in which the blood test was administered violated his constitutional rights. He does not claim, for example, that his consent to the test was the result of coercion, incapacity or misunderstanding. His argument on the point is limited to the unexplained assertion that the blood test results were "obtained in violation of the due process clause."

There is no question that Javorski was advised at the time of his arrest that he had the right to request that an alternative test be administered by the police or that he could, if he wished, have one administered at his own expense. He acknowledges receiving, reading and signing the Informing the Accused form, and he does not claim that he misunderstood its contents or was coerced into signing it. Had he so desired, he knew that he could have a second—or even a third—test administered "on-the-spot." His complaint on this appeal is only that the implied consent process was

defective in not timely advising him of certain aspects of the license-suspension review process that might possibly be of benefit to him. He has not persuaded us that suppression of the blood test results is an appropriate, or even a permitted, remedy under *Zielke* or any other case.[6]

We hold, therefore, that while the facts of the case establish that Javorski was neither timely nor properly advised of his right to have the results of a second BAC test, if favorable to him, considered in administrative proceedings to review his license suspension, that procedural failure does not entitle him to suppression of

---

[6] In *Zielke*, the defendant was charged with homicide by the intoxicated use of a motor vehicle. He consented to a blood test, but was never given either the initial Informing the Accused form or, when he failed the test, the subsequent notices. Like Javorski, Zielke argued for suppression of the test results for the arresting officer's failure to advise him of his rights under the implied consent law. The court rejected the argument, noting that while such a failure might result in loss of the "evidentiary benefits" of automatic or presumptive admissibility of the test results for the substantive offense, under § 343.305(5)(d), STATS.,

> nothing in the [implied consent law] or its history permits the conclusion that failure to comply with [its terms] prevents the admissibility of legally obtained chemical test evidence in the separate and distinct . . . prosecution for offenses involving intoxicated use of a vehicle. Such a holding would lead to an absurd and unreasonable result.

*State v. Zielke*, 137 Wis. 2d 39, 51, 403 N.W.2d 427, 432 (1987). The validity of the driver's consent to the blood test was not an issue in *Zielke*, nor, as we have noted above, is it in this case.

the initial blood test results in the OWI case.[7] We therefore affirm the conviction.

*By the Court.*—Judgment affirmed.

<hr>

[7] Any remedies Javorski may have with respect to the suspension of his license under § 343.305, STATS., are not before us on this appeal.