STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher J. DREXLER, Defendant-Appellant.†

Court of Appeals

*No. 95–0870. Submitted on briefs October 20, 1995.—Decided December 6, 1995.*

(Also reported in 544 N.W.2d 903.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael C. Witt, Kalal & Associates* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John A. Jorgensen*, assistant district attorney.

Before Anderson, P.J., Brown and Snyder, JJ.

ANDERSON, P.J. Christopher J. Drexler's due process rights were not violated when he was informed that his operating privileges would be immediately suspended if the result of any test indicated a prohibited alcohol concentration. Because a blood test was administered as the primary test, his operating privi-

leges were not immediately suspended and the statutory protections and admonitions neither misled him nor denied him due process. We conclude that under the totality of the circumstances, the arresting officer had sufficient justification to stop Drexler for operating a motor vehicle while under the influence of an intoxicant. Finally, Drexler had constitutional notice of the charges against him and was able to mount a solid defense against the charges. Therefore, we affirm.

## TRAFFIC STOP

Drexler's first issue on appeal challenges the lack of objective factors establishing reasonable suspicion for the stop of his vehicle. The facts needed to understand this issue start in the early hours of January 15, 1995, when Officer Joseph Framke of the City of Oshkosh Police Department was dispatched to assist another officer investigating a disturbance. After arriving at the scene of the disturbance, Framke took Drexler aside to interview him about his version of the events. Initially, Drexler was evasive and did not want to talk to Framke. Finally Drexler started to tell the officer that he had an argument with his girlfriend. During the course of his narrative, Drexler began to get upset and evidenced mood swings. There came a point during the narrative that Drexler became so worked up that he could not talk. During the thirty-minute interview, Framke became concerned for his own safety "because defendant had all the indicators that [he] may be becoming assaultive combined with a strong odor of intoxicants coming from his breath at that time."

Based on his training and experience, Framke concluded that Drexler was intoxicated and he told Drexler not to drive. Before leaving the scene of the

disturbance, Framke and another officer helped Drexler push his car off the street into a parking lot. Approximately two hours later, Framke was concluding a traffic stop when he saw Drexler driving his car. Framke pursued Drexler and stopped him, believing that Drexler was operating the motor vehicle while intoxicated.

The trial court denied Drexler's motion to suppress any evidence obtained as a result of what he portrayed as an unlawful stop and detention. On appeal, Drexler insists that under the rationale of *State v. Seibel*, 163 Wis. 2d 164, 471 N.W.2d 226, *cert. denied*, 502 U.S. 986 (1991), there were insufficient objective indicia of intoxication to give rise to a reasonable suspicion that his driving was impaired by alcohol.

Whether a stop meets statutory and constitutional standards is a question of law subject to de novo review. *State v. Krier*, 165 Wis. 2d 673, 676, 478 N.W.2d 63, 65 (Ct. App. 1991). A police officer may detain a person in appropriate circumstances for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 389 (1989). The essential question is whether the action of the law enforcement officer was reasonable under all the facts and circumstances present. *Id.* at 831, 434 N.W.2d at 389. "The question of what constitutes reasonable suspicion is a common sense test. Under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience?" *Id.* at 834, 434 N.W.2d at 390.

Drexler's reliance on *Seibel* is misplaced. The defendant in *Seibel* had been legally arrested for a

crime—negligent homicide—that did not involve intoxication. *See Seibel*, 163 Wis. 2d at 168, 471 N.W.2d at 228. Further, the issue in that case was not whether there was reasonable suspicion to stop for an intoxication-related offense, but only "whether the standard for drawing a blood sample in a search incident to an arrest is 'reasonable suspicion' or 'probable cause' that the defendant's blood contains evidence of a crime." *See id.* at 166, 471 N.W.2d at 227. In short, the issue in *Seibel* had to do with the legality of a search, not whether there was reasonable suspicion to stop.

Here, the record reveals that: (1) Drexler was evasive and uncooperative when first questioned by Framke, (2) Drexler became emotionally worked up and evidenced mood swings when he started to relate his story of what happened, (3) Drexler stopped talking to the officer, (4) Framke detected a strong odor of intoxicants and (5) Framke became concerned for his own safety because Drexler had all the indicators of someone who could become assaultive. Having gathered all of this information after a thirty-minute conversation, and based on his training and experience, the officer decided that Drexler was under the influence and suggested that Drexler not drive a vehicle anymore that day. The officer even helped push the car off of the street and into the parking lot. Then two hours later, the officer saw Drexler driving the car.

■

Giving due deference to the facts and the reasonable inferences drawn by Framke in the light of his training and experience, we believe that the totality of the circumstances would lead a reasonable police officer to believe that Drexler was operating a vehicle while under the influence of an intoxicant.

## INFORMATION REGARDING SECOND TEST

Drexler's second issue focuses on his claim that he was not provided with sufficient information to make a meaningful decision regarding his right to an alternate test. The facts relating to this issue emanate from the events after Drexler failed the three field sobriety tests that were administered and Framke placed him under arrest for operating a motor vehicle while intoxicated.

Although the officer planned to take Drexler to the station house to administer the Intoxilyzer 5000 Test, Drexler asked to be taken to the hospital because he was afraid he was going to harm himself. At the hospital Drexler was handcuffed to a gurney after banging his head against the wall. Drexler was read the Informing the Accused form and consented to an evidentiary sample of his blood. After the blood draw was completed, the officer started the paper work associated with the Notice of Intent to Suspend and Administrative Review Request forms; however, he did not complete this paperwork until he received the results of the blood sample on January 23, 1995. The officer then delivered the second citation and the Notice of Intent to Suspend and Administrative Review Request forms to Drexler.

Drexler filed a motion to suppress the results of the blood draw contending that paragraph 4 of the Informing the Accused form affirmatively misstated the provisions of the Implied Consent Law. *See* § 343.305(8)(b)2.d, STATS. This subparagraph states that a person's operating privileges may be administratively suspended only if *each* of the test results indicate a blood alcohol concentration of 0.10 or more.[1] He argued that *Village of Oregon v. Bryant,* 188 Wis. 2d

---

[1] Paragraph 4 of the Informing the Accused form provides:

680, 524 N.W.2d 635 (1994), could not be used to salvage the misstatement of law because here, unlike the sequence of events in *Bryant,* the test results were not known until several days after the blood draw; therefore, the correct statement of the law on the Notice of Intent to Suspend and Administrative Review Request was not provided to him until after the opportunity for a second test had passed. The trial court denied Drexler's motion reasoning that *Bryant* was not distinguishable from this case and concluding that although the forms are imperfect, they are not contrary to the statutes and are not a violation of due process.

On appeal, Drexler argues it is only under the breath test scenario that a defendant is properly informed of the consequences and the significance of another test. The gist of Drexler's argument is that the advisory he was given was "woefully incomplete." Drexler insists that under *Bryant* "it is only when, a) the test results are known and the accused knows that he or she has failed the test, and, further, that b) the person is given these forms [Notice of Intent to Suspend and Administrative Review Request] after the test results are known, that the person is first *accurately* informed of the value of a second test." (Emphasis in original.)

Drexler's complaints about the inadequacy of the Informing the Accused form are questions of law. We review questions of law without deference to the trial court. *State v. Piskula,* 168 Wis. 2d 135, 142, 483 N.W.2d 250, 252 (Ct. App. 1992).

---

If you take one or more chemical tests and the result of any test indicates you have a prohibited alcohol concentration, your operating privilege will be administratively suspended in addition to other penalties which may be imposed.

We begin our review by reiterating that the blood test was administered as the primary test at Drexler's request. Drexler asked to be taken to the hospital because he was afraid he would hurt himself; in acquiescing to this request, Framke had no choice but to give up his request that Drexler submit to a breath test. Drexler concedes that at the hospital he was read the complete Informing the Accused form including paragraph 3 which informed him that after submitting to the requested test he could request that an alternative test be administered at the government's expense.

Drexler's interpretation of *Bryant* narrowly focuses on the supreme court's statement that, "we hold that the entire process, when viewed as it must be as a continuum, is not contradictory or confusing." *Bryant,* 188 Wis. 2d at 693, 524 N.W.2d at 640.[2] This myopic view of *Bryant* misses the principal reason behind the decision. The supreme court decided *Bryant* to resolve any confusion that existed over whether or not *Piskula* was a correct analysis of the Implied Consent Law and the Informing the Accused form. The supreme court concluded that "*Piskula* was, and is, correct." *Bryant*, 188 Wis. 2d at 687 n.5, 524 N.W.2d at 638. The supreme court wrote, "we rely on *Piskula* for the proposition that the information provided to the defendants, which is the same today as it was when *Piskula* was decided, did not mislead defendants as to

[2] Although the Court of Appeals decision under consideration in *Bryant* discussed what it believed to be the contradictory and confusing nature of the Implied Consent Law and the Informing the Accused form the decision ultimately resolved the issues against the defendants because the question had been decided in *State v. Piskula,* 168 Wis. 2d 135, 483 N.W.2d 250 (Ct. App. 1992). *Village of Oregon v. Bryant*, 188 Wis. 2d 680, 686-87, 524 N.W.2d 635, 637 (1994).

the merits of an alternative test and therefore, that they were properly informed of the law." *Id.*

In *Piskula* the defendant argued that "he should have been advised that if his primary test resulted in a BAC of 0.10% or more and he requested an additional test that resulted in a BAC of less than 0.10%, his driving privileges would not be immediately suspended." *Piskula,* 168 Wis. 2d at 141, 483 N.W.2d at 252. We rejected the defendant's argument, concluding:

> Section 343.305(4), Stats., sets forth the information that Piskula must be informed about with respect to taking a BAC test. Piskula's driving privileges would have been immediately suspended if any test resulted in a BAC of 0.10% or more. *See* sec. 343.305(7), Stats. Pursuant to sec. 343.305(4)(c)1, Piskula was informed that if any test resulted in a BAC of 0.10% or more, in addition to other penalties that may be imposed, his driving privileges would be suspended. Piskula was properly informed of the law. Thus, we conclude that Piskula's due process rights were not violated.

*Piskula,* 168 Wis. 2d at 143, 483 N.W.2d at 253.

In *Piskula,* we did not rely upon a consideration of a continuum in deciding whether or not the Informing the Accused form improperly advised a drunk-driving defendant of his or her rights under the Implied Consent Law. Rather, our focus was on whether the drunk driving defendant was properly advised of the rights afforded by the Implied Consent Law.[3]

---

[3] As applicable to Drexler, § 343.305, STATS., provides:

**(2)** IMPLIED CONSENT. Any person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood

For this appeal our focus will be similarly limited and will be guided by our decision in *Piskula*, which was validated in *Bryant*. The Informing the Accused form used in this case properly advised Drexler of his rights as required by § 343.305(4), STATS., at the time the officer requested the initial chemical test under the Implied Consent Law. Drexler was explicitly told that after submitting to the requested test, he could request that a second test be administered at no cost to him. The information given to him made it clear that the second test could only be asked for after Drexler had complied with the blood test requested by the officer.

Not only did the arresting officer clearly and promptly advise Drexler of his rights, he also followed the statutorily mandated sequence of events. He read Drexler the proper form. *See* § 343.305(4), STATS. He then asked Drexler if he would submit to a chemical test of his blood. Framke directed a hospital employee to withdraw blood from Drexler. *See* § 343.305(5)(a). He did not administratively suspend Drexler's operating privileges after the blood was drawn, he waited until after the blood test results became known several days later. *See* § 343.305(7)(a).

Despite the officer's faithful adherence to the statutorily mandated sequence of events for a blood test, Drexler suggests that he was deprived of due process because he was not properly informed that a second test may have had the effect of rescinding the officer's administrative suspension of his operating privileges.

---

or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, a combination of alcohol and controlled substances, other drugs or a combination of alcohol and other drugs when requested to do so by a law enforcement officer under sub. (3) (a) or (am) . . . . Any such tests shall be administered upon the request of a law enforcement officer.

Drexler's argument misses the point. Under § 343.305(7)(a), STATS., Framke could not administratively suspend Drexler's privileges because there were no test results that established that Drexler's blood contained a prohibited blood alcohol concentration. Because Framke was prohibited from suspending Drexler's privileges, he was not obligated under § 343.305(8)(a) or (am) to give Drexler either the Notice of Intent to Suspend form or the Administrative Review Request form.

■

We conclude that Drexler was properly informed of the law and that his due process rights were scrupulously honored. Neither the statutory process nor the statutory protections and admonitions misled Drexler. Drexler was given all of the information mandated by due process and the statute. After the blood was drawn, he retained the absolute right to have a second test; there was no appreciable risk to Drexler if he had asked for the second test. After the blood was drawn he still retained his driving privileges; there was no requirement to advise him of the opportunity to challenge the suspension of his privileges or the potential evidence that would be considered relevant at such a hearing.

### AMENDMENT OF COMPLAINT AT TRIAL

Drexler's final grievance on appeal pertains to the amendment of Count 2 of the criminal complaint after the State rested its case. Count 2 of the original complaint alleged that Drexler "did unlawfully drive a motor vehicle while having 0.1 grams or more of alcohol in 210 liters of the defendant's breath." The affidavit in support of this allegation stated that a blood test had been performed. Prior to trial, Drexler stipulated to the

admissibility of the results from the blood test. At the conclusion of the State's case, the State moved to amend Count 2 to allege that Drexler "did unlawfully operate a motor vehicle while having the blood alcohol concentration of 0.1% or more by weight of alcohol in the defendant's blood." Drexler objected to the amendment on the grounds of prejudice. He argued that he had made certain strategic decisions, including entering into the stipulation, on the basis that the original complaint alleged a prohibited alcohol concentration in his breath sample and not in his blood sample. The trial court granted the motion to amend finding that Drexler had been given notice that the State would be relying upon a blood sample in the body of the complaint.

On appeal, Drexler persists in arguing that the amendment of the complaint was prejudicial. He contends that breath and blood alcohol concentrations are separate and distinct offenses with different elements of proof. Drexler complains that the trial court refused to provide him with any meaningful relief after it amended the complaint. He argues that the trial court should have either granted him a twenty-four-hour adjournment or declared a mistrial because he was not prepared to challenge the blood test.

We review a trial court's decision to amend a count in a criminal complaint for a clear or manifest misuse of discretion. *State v. Neudorff,* 170 Wis. 2d 608, 615, 489 N.W.2d 689, 692 (Ct. App. 1992). We will only reverse if the amendment prejudiced the defendant's right to notice, speedy trial and the opportunity to defend. *Id.* When we consider whether the defendant was prejudiced, we first look to whether he or she was given sufficient notice of the nature and cause of the

amendment so that he or she could prepare and defend against it. *See id.* at 617, 619, 489 N.W.2d at 693-94.

■

We conclude that the trial court did not misuse its discretion. Drexler had notice that the State would be relying upon a blood test to prove that he had a prohibited alcohol concentration and he vigorously defended against a blood test. Drexler had notice from several sources that the only prohibited alcohol concentration test results were from blood tests. First, the affidavit in support of the criminal complaint stated that blood was drawn. Second, Drexler had a copy of Framke's report that stated a blood sample was taken. Third, at a motion hearing held twelve days before the trial, the State confirmed for the trial court and Drexler that it anticipated calling the blood technician who drew the blood and the blood technician who tested the blood. Finally, at the same hearing, the State told the trial court and Drexler that a breath test was not taken.

Not only did Drexler have ample notice that the State would be relying upon a blood test rather than a breath test, he also defended against the blood test. Drexler filed a motion for discovery under § 345.421, STATS., to inspect and test all devices used to determine the presence of alcohol in body fluid. He also sought to suppress "all results of the analyses of samples of defendant's blood for the presence of alcohol performed subsequent to defendant's arrest . . . ."

*By the Court.*—Judgment affirmed.