COUNTY OF DANE, Plaintiff-Respondent,

v.

Steven J. GRANUM, Defendant-Appellant.†

Court of Appeals

*No. 95–3470. Submitted on briefs May 24, 1996.—Decided June 27, 1996.*

(Also reported in 551 N.W.2d 859.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Stephen E. Mays* of *Kalal & Associates* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Joseph E. Mimier*, assistant district attorney.

Before Eich, C.J., Dykman and Vergeront, JJ.

VERGERONT, J.   Steven Granum appeals from a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration in violation of § 69.01 DANE COUNTY ORDINANCES, which incorporates § 346.63(1)(b), STATS.[1] Granum claims the trial court erred in admitting into evidence the results of a blood test. Granum contends that he was not informed in a timely manner of the benefits of having an alternative chemical test performed and that this violated the implied consent law, § 343.305, STATS.[2] That violation, according to Granum, should result in the loss of favorable statutory presumptions of the blood test results under §§ 343.305(5)(d) and 885.235, STATS.[3]

---

[1] The chief judge of the court of appeals converted this appeal from a one-judge panel to a three-judge panel by order dated June 17, 1996.

[2] Section 343.305(2), STATS., provides in relevant part:

> Any person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol . . . when requested to do so by a law enforcement officer under sub. (3)(a) or (am) . . . . Any such tests shall be administered upon the request of a law enforcement officer.

After submitting to one test at the officer's request, the individual has the right to have an alternative test performed by the law enforcement agency or a test performed by a qualified person chosen by the individual. Section 343.305(5) and (6), STATS.

[3] Section 343.305(5)(d), STATS., provides in part:

Granum also argues that he was subject to double jeopardy because of the administrative suspension of his license. We reject both arguments and affirm.

Officer Kurt Pierce of the Dane County Sheriff's Department stopped Granum for speeding in the early morning hours of May 28, 1995. After administering a series of field sobriety tests, Pierce placed Granum under arrest for operating a motor vehicle while under the influence of an intoxicant. Granum agreed to perform a breath test. Prior to administering the breath test, Pierce read Granum the standard Informing the Accused form, which states in pertinent part that after submitting to the test requested by the officer, the accused may request an alternative test that the law enforcement agency is prepared to administer at its expense, or may request a reasonable opportunity to have a qualified person of the accused's choice administer a chemical test at the accused's expense. The form also states that if the accused takes one or more tests and "the result of *any* test" (emphasis added) indicates the accused has a prohibited alcohol concentration, operating privileges will be administratively sus-

> At the trial of any civil or criminal action or proceeding arising out of the acts committed by a person alleged to have been driving or operating a motor vehicle while under the influence of an intoxicant . . . the results of a test administered in accordance with this section are admissible on the issue of whether the person was under the influence of an intoxicant . . . or any issue relating to the person's alcohol concentration. Test results shall be given the effect required under s. 885.235.

Section 885.235(1), STATS., gives certain evidentiary effect to the chemical analysis of samples taken within three hours of the event without the necessity for expert testimony. Because it is unnecessary to the disposition of this appeal, we do not decide whether the blood test results would have been admissible had §§ 343.305(5)(d) and 885.235, STATS., not applied.

pended in addition to other penalties which may be imposed.

'When the breath test did not produce a valid result, Pierce transported Granum to a hospital and requested that he submit to a blood test. Before administering the test, Pierce again read the Informing the Accused form to Granum. Blood was drawn for the test at 4:09 a.m., and Granum did not request an alternative test.

The blood sample was analyzed on May 30, 1995, and showed a blood alcohol concentration of .169%. Based on this result, a Notice of Intent to Suspend Operating Privilege was sent to Granum, as well as an Administrative Review Request form. These documents advise of the right to an administrative hearing to contest the suspension and of the issues at the hearing—one of which is whether "*each* of the test results indicates the person had a blood alcohol concentration of 0.1% or more." (Emphasis added.)

Granum apparently concedes that the Informing the Accused form was timely provided and that it complied with § 343.305(4) and (5), STATS. He also does not object to the contents of the Notice of Intent to Suspend Operating Privilege and Administrative Review Request forms.[4] His point is that it is only upon receipt of these documents, days after the occurrence, that he learned of the benefits of an alternative test: after failing the first test, a contradictory result on the alternative test could have aided him in seeking a rescission of the suspension that occurred based on the first test. But by the time he received the result of the

---

[4] Section 343.305(8), STATS., requires notice of the intended administrative suspension and of the right to obtain administrative and judicial review of the suspension.

blood test, it was too late to take an alternative test. Granum contends this violates the "continuum of implied consent procedures," citing *City of Waupaca v. Javorski*, 198 Wis. 2d 563, 572, 543 N.W.2d 507, 511 (Ct. App. 1995). This issue presents a question of law, which we review de novo. *See State v. Piskula*, 168 Wis. 2d 135, 138, 483 N.W.2d 250, 251 (Ct. App. 1992).

The fact situation in *Javorski* is very similar. In *Javorski*, the police officer properly read Javorski the Informing the Accused form and Javorski did not request an alternative test. However, because the first test administered was a blood test, the results were not immediately available. Javorski received the test results along with the Notice of Intent to Suspend Operating Privilege several days later. *Javorski*, 198 Wis. 2d at 566-67, 543 N.W.2d at 509. Relying on *Village of Oregon v. Bryant*, 188 Wis. 2d 680, 524 N.W.2d 635 (1994), we held that the manner in which Javorski was informed of his rights and options under the implied consent law was inaccurate and misleading because he was not told in a timely manner of the potential advantages of an alternative test.[5] *Javorski*,

___

[5] Because we conclude that Granum is not entitled to any remedy under *City of Waupaca v. Javorski*, 198 Wis. 2d 563, 543 N.W.2d 507 (Ct. App. 1995), we need not attempt to reconcile *Javorski* with *State v. Drexler*, 199 Wis. 2d 128, 544 N.W.2d 903 (Ct. App. 1995), decided approximately one month after *Javorski*. In *Drexler*, as in *Javorski*, we rejected the argument that the defendant's right to due process was violated because he was not informed until he received the results of the first test—a blood test—of the potential advantages of an alternative test. We also held in *Drexler* that providing this information only after the results of the blood test were known, several days later, did not violate the statutory procedure in § 343.305(4), (5) and (7), Stats.

198 Wis. 2d at 572, 543 N.W.2d at 511. However, we also concluded that this was not a constitutional violation and did not render the first test results inadmissible in the operating-while-intoxicated proceeding. *Id.* at 573, 543 N.W.2d at 511. We noted that the issue of what remedies Javorski might have with respect to the suspension of his license under § 343.305, STATS., was not before us. *Id.* at 575 n.7, 543 N.W.2d at 512.

*Javorski* does not support Granum's argument that the blood test results are not entitled to the favorable presumptions and evidentiary effect of §§ 343.305(5)(d) and 885.235, STATS. That issue was not raised or decided in *Javorski*. In the context of rejecting Javorski's argument that he was entitled to suppression of the blood test results, we did refer in a footnote to language in *State v. Zielke*, 137 Wis. 2d 39, 51, 403 N.W.2d 427, 432 (1987), which we characterized as saying that a failure to comply with the statutory procedures "might result in loss of the 'evidentiary benefits' of automatic or presumptive admissibility of the test results for the substantive offense." *Javorski*, 198 Wis. 2d at 574 n.6, 543 N.W.2d at 512. However, *Zielke* does not support Granum's argument.

The court in *Zielke* held that a failure to comply with the procedures of the implied consent law does not render chemical tests inadmissible if they are otherwise constitutionally obtained. *Zielke*, 137 Wis. 2d at 41, 403 N.W.2d at 428. In suggesting that there were still incentives for law enforcement officials to comply with the implied consent law procedures, the court stated:

> As previously explained, when law enforcement officers fail to comply with the implied consent stat-

ute the driver's license cannot be revoked for refusing to submit to chemical tests. Furthermore, if the procedures of sec. 343.305, STATS., are not followed the State cannot rely on the favorable statutory presumptions concerning the admissibility of chemical-test results set forth in sec. 343.305(7). In addition, the fact of refusal cannot be used in a subsequent criminal prosecution for drunk driving as evidence of the driver's consciousness of guilt.

*Zielke*, 137 Wis. 2d at 54, 403 N.W.2d at 433.

*Zielke* was not concerned with the statutory requirements regarding the alternative test. *Zielke* does not support the proposition that a defect in providing information on the alternative test, or the timing of that information, results in the loss of favorable statutory presumptions for admissibility of the first test. Granum does not point to any statutory procedure that was not complied with concerning the blood test. He does not argue that the potential advantages of a second chemical test should have been made known to him *before* he took the blood test, and we can see no reason why his consent to the first test would have depended on having information about the potential benefits of a second test.

■

We conclude that the timing of the Notice of Intent to Suspend Operating Privilege does not result in the loss of favorable statutory presumptions or evidentiary effect as to the blood test. The trial court did not err in denying Granum's motion to exclude the test results.

■

*State v. Mc Master*, 198 Wis. 2d 542, 543 N.W.2d 499 (Ct. App. 1995), *petition for review granted*, 199 Wis. 2d xxxv, 546 N.W.2d 468 (Wis. March 12, 1996), disposes of Granum's double jeopardy claim. In

*Mc Master*, we held that criminal prosecution for operating a motor vehicle with a prohibited blood alcohol concentration after administrative suspension of operating privileges does not violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *Id.* at 544, 543 N.W.2d at 499. We conclude Granum's prosecution did not violate the Double Jeopardy Clause.

*By the Court.*—Judgment affirmed.