STATE of Wisconsin, Plaintiff-Respondent,

v.

Patrick J. FAHEY, Defendant-Appellant.†

Court of Appeals

*No. 2004AP102–CR. Submitted on briefs November 8, 2004.
—Decided June 30, 2005.*

2005 WI App 171

(Also reported in 702 N.W.2d 400.)

† Petition to review denied 9-8-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tracey A. Wood* of *Van Wagner & Wood, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jonathon G. Kaiser*, assistant district attorney for Dane County.

Before Deininger, P.J., Vergeront and Lundsten, JJ.[1]

¶ 1. LUNDSTEN, J. Patrick J. Fahey appeals a judgment of the circuit court finding him guilty of operating a motor vehicle while intoxicated. Fahey was arrested for driving while intoxicated and transported to a police station where police informed Fahey of his right to an alternative test at agency expense and then administered a police-requested breathalyzer test. While at the police department, Fahey did not request an alternative test. Instead, Fahey returned to the police department after he was released and then, for the first time, requested an alternative test at agency expense. Fahey argues that the police violated WIS. STAT. § 343.305(5)(a) by failing to honor his request for an alternative test and that the circuit court erred by

---

[1] This case was converted from a one-judge appeal to a three-judge appeal pursuant to WIS. STAT. § 809.41(3) (2003–04). All further references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

denying his motion to suppress the result of his breathalyzer test. We affirm the circuit court. We hold that, where police have informed a suspect of his or her right to an alternative test at agency expense, the suspect has ample opportunity to make a request, the suspect makes no request, and the suspect is released from custody and leaves the presence of custodial police, a subsequent request for an alternative test at agency expense is not a request within the meaning of § 343.305(5)(a).

## *Background*

¶ 2. No evidentiary hearing was held because the parties stipulated to the facts in a police report. Those undisputed facts are as follows.

¶ 3. In January 2003, at 12:40 a.m., Fahey was stopped by a police officer for speeding. Fahey's speech was slurred and he had a strong odor of intoxicants on his breath. Fahey admitted that he had been drinking beer, and he performed poorly on field sobriety tests. Fahey was arrested and transported to the Cottage Grove Police Department. At the police department, the officer issued Fahey a ticket for operating a motor vehicle while intoxicated. The officer read Fahey an "Informing the Accused" form, thereby informing Fahey that, if he took the test requested by the police, he could take an alternative test provided by the law enforcement agency free of charge.[2] Fahey did not request such a test.

¶ 4. A breathalyzer test was administered beginning at 1:25 a.m. The test measured Fahey's blood

---

[2] The parties agree that this was the content of the advisement, and we rely on that agreement, but note that the record does not contain the language of the particular advisement given to Fahey.

alcohol level at .20. At some point during Fahey's time in custody, he called his wife to come and pick him up. At 1:55 a.m., Fahey was released from police custody and left the police station with his wife. Approximately fifteen minutes later, Fahey returned to the station and, for the first time, told police he wanted an alternative test. The arresting officer declined to provide a test at government expense. The officer informed Fahey that Fahey could go to the hospital and get a blood test done at his own expense. Fahey indicated that he would do that and he left.

¶ 5. Fahey subsequently moved the circuit court to suppress the results of his breathalyzer test, alleging that the arresting officer failed to abide by Wisconsin's implied consent law, WIS. STAT. § 343.305, when the officer declined Fahey's request for an alternative chemical test of Fahey's blood at agency expense. The circuit court denied the suppression motion, concluding that "a request for a free second test which is first made after the defendant has been released from custody comes too late."

### Discussion

¶ 6. Wisconsin's implied consent law permits arrestees, upon submitting to the police agency's primary test, the right to request an alternative chemical test at the police agency's expense. WISCONSIN STAT. § 343.305(5)(a) states, in part:

> If the person submits to a test under this section, the officer shall direct the administering of the test. A blood test is subject to par. (b). *The person who submits to the test is permitted, upon his or her request, the alternative test provided by the agency* under sub. (2) or, at his or her own expense, reasonable opportunity to

682

have any qualified person of his or her own choosing administer a chemical test for the purpose specified under sub. (2) .... *The agency shall comply with a request made in accordance with this paragraph.*

(Emphasis added.) The requirements regarding an alternative test at agency expense are twofold: the accused must be told of the alternative test and, if the accused makes a "request" for an alternative test at agency expense, police must make a "diligent effort . . . to comply with the demand." *See State v. Renard,* 123 Wis. 2d 458, 461, 367 N.W.2d 237 (Ct. App. 1985).

¶ 7. In this case, it is undisputed that Fahey was informed of his right to an alternative test free of charge. Fahey did not, however, request such a test when so informed. Indeed, Fahey did not request an alternative test at agency expense during the next half hour or so while police administered a breathalyzer test and before Fahey left the police station with his wife. Fahey first requested an alternative test at agency expense after he was released from custody, left the police department, and then returned about fifteen minutes later. The question here is whether, under these circumstances, Fahey made a "request" within the meaning of Wis. Stat. § 343.305(5)(a).[3]

---

[3] Fahey argues that suppression of his breath test is required if the officer violated the implied consent law by improperly refusing Fahey's request for an alternative test at agency expense. He asserts that suppression has "invariably" been the result when courts conclude there has been a violation of the implied consent law. Fahey points to *State v. McCrossen,* 129 Wis. 2d 277, 385 N.W.2d 161 (1986), and *State v. Renard,* 123 Wis. 2d 458, 367 N.W.2d 237 (Ct. App. 1985), as examples. The State does not address the topic here, but it has in the past. *See State v. Schmidt,* 2004 WI App 235, ¶ 2 n.2, 277 Wis. 2d 561, 691 N.W.2d 379 (declining to address the State's argument that,

¶ 8. Fahey contends that the question here should be decided by determining "how diligent the police were

even if a defendant makes a request for an additional test, the failure of police to provide an additional test does not require suppression). We choose not to resolve this issue, but note that the supreme court's decisions in *State v. Piddington*, 2001 WI 24, 241 Wis. 2d 754, 623 N.W.2d 528, and *State v. Zielke*, 137 Wis. 2d 39, 403 N.W.2d 427 (1987), explain that a violation of the implied consent law does not necessarily lead to suppression of an otherwise lawfully obtained test result. *See Piddington*, 241 Wis. 2d 754, ¶¶ 34–36, 50–54; *Zielke*, 137 Wis. 2d at 51–56. In *Piddington*, the court discussed *McCrossen* and *Renard*. *Piddington*, 241 Wis. 2d 754, ¶¶ 50–54. The court stated: "Even if [the defendant] had requested but did not receive an alternative test, he would not be entitled to automatic suppression of the results of the test he did have, as he now contends . . . . [T]he implied consent law does not dictate that a violation thereof requires suppression of a blood test as a remedy." *Id.*, ¶ 52. In *Zielke*, the court explained that there are sanctions for lack of compliance with the implied consent law, but suppression is not necessarily one of them. *See Zielke*, 137 Wis. 2d at 51 ("[E]ven though failure to advise the defendant as provided by the implied consent law affects the State's position in a civil refusal proceeding and results in the loss of certain evidentiary benefits, e.g., automatic admissibility of results and use of the fact of refusal, nothing in the statute or its history permits the conclusion that failure to comply with sec. 343.305(3)(a), Stats., prevents the admissibility of legally obtained chemical test evidence in the separate and distinct criminal prosecution for offenses involving intoxicated use of a vehicle."); *see also County of Dane v. Granum*, 203 Wis. 2d 252, 551 N.W.2d 859 (Ct. App. 1996) (discussing *Zielke* and the effect of not informing a suspect of the benefits of an alternative test on the admissibility and favorable evidentiary treatment under Wis. Stat. § 885.235). In addition, we note that suppression of evidence is normally required only when evidence has been obtained in violation of a constitutional right or in violation of a statute that specifically requires suppression as a remedy. *See State v. Repenshek*, 2004 WI App 229, ¶ 23, 277 Wis. 2d 780, 691 N.W.2d 369, *review denied*, 2005 WI 60, 281 Wis. 2d 113, 697 N.W.2d 472

in offering the second test and in ensuring there was an unequivocal refusal [to take that second test]." Fahey argues that, under *State v. Stary*, 187 Wis. 2d 266, 522 N.W.2d 32 (Ct. App. 1994), this is a question answered case by case by weighing various factors, such as whether the accused affirmatively refused the alternative test, whether the officer was still available to honor the request, and whether the request was made within three hours of the stop.[4] Looking at the particular facts in this case, Fahey argues that he requested an alternative test at agency expense and the officer failed to exercise reasonable diligence in honoring that request. Fahey agrees that his release from custody is a relevant consideration, but asserts that his release and his act of leaving the police department do not constitute a cutoff point for purposes of making a request for an alternative test at agency expense. Fahey asserts that the "point of the *Stary* case was that there is no bright line rule with respect to the timing of requests for second tests" because the *Stary* court "explicitly held that courts should look at the totality of circumstances in an individual case to determine whether the officer exercised reasonable diligence in ensuring the arrestee received the requested second test."

¶ 9. The State frames its argument in terms of waiver. In the State's view, Fahey waived his right to an alternative test at agency expense by waiting until after his release to make that request. But, as Fahey points

(No. 2003AP3089–CR); *State v. Keith*, 2003 WI App 47, ¶ 8, 260 Wis. 2d 592, 659 N.W.2d 403, *review denied,* 2003 WI 32, 260 Wis. 2d 753, 661 N.W.2d 101 (No. 2002AP583–CR).

[4] Three hours has significance in drunk driving cases because of the favorable admissibility rules for results of tests administered "within 3 hours after the event to be proved." *See* Wis. Stat. § 885.235 (1g) and (3).

out, the State does not provide legal support for its waiver theory. At the same time, the State also looks to *Stary* for guidance. In the State's view, this case is like *Stary* because here, as in *Stary*, the request for an alternative test at agency expense was made after the accused was released from custody.

¶ 10. Because both parties place primary reliance on *Stary*, we pause to address that case. The defendant in *Stary*, while in custody at a police department, submitted to a police-requested test and repeatedly declined an officer's offer of an alternative test at the agency's expense. *Id.* at 268. Thirty-five minutes after his release, the defendant, by means of a phone call placed by a nurse at a medical center, requested an alternative test at agency expense. The police declined the request. *Id.* Although our analysis in *Stary* may be susceptible to differing interpretations, at least one rule from *Stary* is clear: When police advise a suspect of his or her right to an alternative test at agency expense and repeatedly offer such a test, when the suspect affirmatively refuses the offer, and when the suspect then leaves police custody, police have no obligation to honor a subsequent request for an alternative test at agency expense. *Id.* at 271–72. More to the point, we did not say in *Stary* that police may deny a post-release request for an alternative test at agency expense *only* if the defendant expressly refuses an affirmative offer of an alternative test while in custody.

¶ 11. As we did in *Stary*, we conclude that this case requires interpretation of WIS. STAT. § 343.305(5)(a). *See Stary*, 187 Wis. 2d at 269. The question here is whether a request is a "request" within the meaning of § 343.305(5)(a) under the following circumstances: when police have informed a suspect of his or her right to an alternative test at agency expense, when the

686

suspect has ample opportunity to make a request, when the suspect makes no request, when the suspect is released from custody and leaves the presence of custodial police, and when the suspect later requests an alternative test at agency expense.

¶ 12. In *Peterson v. Volkswagen of America, Inc.*, 2005 WI 61, 281 Wis. 2d 39, 697 N.W.2d 61, the supreme court summarized the rules of statutory construction:

> "When interpreting statutes, our goal is to give effect to the language of the statute. We begin by looking to the language of the statute because we 'assume that the legislature's intent is expressed in the statutory language.' Technical terms or legal terms of art appearing in the statute are given their accepted technical or legal definitions while nontechnical words and phrases are given their common, everyday meaning. Wis. Stat. § 990.01(1). Terms that are specifically defined in a statute are accorded the definition the legislature provided. In addition, we read the language of a specific statutory section in the context of the entire statute. Thus, we interpret a statute in light of its textually manifest scope, context, and purpose."

> As such, extrinsic sources, such as legislative history, are not consulted unless the statute is ambiguous. A statute is ambiguous if it is susceptible to more than one reasonable understanding.

*Id.*, ¶ 19 (citations omitted).

¶ 13. The implied consent statutes do not define a "request" for an alternative test at agency expense. The pertinent subsection simply states that, if a suspect submits to a primary test selected by the police, the suspect is entitled to an alternative test at agency expense "upon his or her request" and that the "agency

shall comply with a request made in accordance with this paragraph." Wɪs. Sᴛᴀᴛ. § 343.305(5)(a). We conclude that it is unreasonable to suppose that the legislature meant to impose a requirement that police honor all requests, no matter when made and no matter what the circumstances. Thus, the question becomes whether the request in this case was a "request" within the meaning of § 343.305(5)(a).

¶ 14. Although the parties frame the question differently, they essentially offer competing interpretations of the statute. Fahey takes the position that courts must always decide whether a request is one the legislature intended to be honored on a case-by-case basis. Applying that approach here—and emphasizing that his request was well within three hours of the stop—Fahey contends his request was a request within the meaning of the statute. The State, in keeping with the circuit court's decision, argues that it is unreasonable to think that the legislature meant to hold open the time period for a request beyond when a suspect is released from custody.

¶ 15. We conclude that the State's interpretation is more reasonable, primarily because Fahey's proposal is unworkable. If a case-by-case approach is used for requests made after release, does that mean police must make themselves available for some time period after a release? Does that mean that a test is required if the processing officer is still available when the suspect returns, but not required if the officer happens to have left or is otherwise occupied? Or, must an officer unfamiliar with the case investigate and decide whether to honor the request? Is fifteen minutes soon enough, but an hour too late?

¶ 16. Fahey emphasizes that there was ample time to administer an alternative test within three

hours of the time he was stopped. As noted earlier, three hours has significance because of the favorable admissibility rules for results of tests administered "within 3 hours after the event to be proved." *See* WIS. STAT. § 885.235 (1g) and (3); *see generally State v. Fonte*, 2005 WI 77, ¶¶ 14–17, 281 Wis. 2d 654, 698 N.W.2d 594. But it is not apparent why this statutory three-hour time limit is relevant here. Both primary and alternative testing may occur after the three-hour time limit in § 885.235. It follows that valid requests for alternative testing at agency expense may be made after the statutory three-hour time limit. In isolating the three-hour time limit as a factor, Fahey does not explain why this factor should make it any more or less reasonable for police to grant or reject a request for an alternative test. In *Stary*, we noted that the defendant *argued* that the fact that his request was made within three hours of the stop weighed in favor of honoring his request. *Stary*, 187 Wis. 2d at 272. We did not, however, resolve whether this factor was relevant. Rather, we said that "however relevant" it might be, it did not affect our decision. *Id.* We conclude here that the statutory three-hour time limit is not relevant to whether police must honor a request for an alternative test.

¶ 17. In interpreting WIS. STAT. § 343.305(5)(a), we also take into account that the issue is not whether a suspect may have an alternative test, but whether a police agency must provide an alternative test at no charge. Our construction of the statute does not prevent suspects from obtaining evidence; rather, it places a reasonable limit on their ability to do so at taxpayer expense. Fahey was free to obtain an alternative test, but it was too late to ask for one provided at agency expense.

¶ 18. Our decision is narrow. We hold that, where police have informed a suspect of his or her right to an alternative test at agency expense, the suspect has ample opportunity to make a request, the suspect makes no request, and the suspect is released from custody and leaves the presence of custodial police, a subsequent request for an alternative test at agency expense is not a request within the meaning of WIS. STAT. § 343.305(5)(a). We do not hold that police must honor all requests made while a suspect remains in custody.

¶ 19. We conclude that the police here complied with the implied consent law. We affirm the circuit court.

*By the Court.*—Judgment affirmed.